[Civ. No. 5616.   Fourth Dist.   Feb. 20, 1958.]

MANUEL ENOS et al., Respondents, v. MONROE D.
HARMON et al., Appellants.

Robert M. Wash, County Counsel (Fresno), Spencer Thomas, Jr., Assistant County Counsel, and Leonard, Hanna & Brophy for Appellants.

Walch & Griswold and Lyman D. Griswold for Respondents.

GRIFFIN, J.—Plaintiffs and respondents brought this action against defendants and appellants to quiet title to certain easements, for injunction, and damages arising from a change, by defendants in a certain irrigating culvert pipe and ditch, conveying waters under the highway of defendant county of Fresno and across a parcel of defendant Monroe D. Harmon and wife's property.

Plaintiffs Ivan L. Crawford and wife own and reside on 30 acres of farm land at the northwest corner of the intersection of Mt. Whitney and Walnut avenues in Fresno County. Plaintiff Estelle M. Crawford holds a life estate in said real property. Plaintiffs Frank F. Mattos and wife own and operate a farm containing 30 acres at the southwest corner of said intersection. It adjoins a 30-acre farm owned by plaintiff Manuel Enos. The land at the southeast corner of the intersection is owned by defendant Harmon and wife. North of the Crawford property lies a canal. Previous to January, 1953, from a headgate in this canal, ran a private open irrigation ditch in a general southwesterly direction across the Crawford property, under Mt. Whitney Avenue, through a 36-inch width corrugated iron pipe. It was about 24 feet long and located about eight inches below the surface

of the highway with headwalls at each end protruding above the level of the roadway. A crossing of the water through it ran over the corner of defendant Harmon's land through a short open ditch to a 30-inch wide concrete pipe culvert running under Walnut Avenue, which was about 24 feet long and with like elevation and headgates. The irrigation water passing through this culvert then emptied into an open ditch running across the Mattos property to the Enos property.

There is evidence to the effect that defendants Harmon and the Fresno County road superintendent for that district agreed to and did, without notice to plaintiffs, change the pipe running under Mt. Whitney Avenue from a 36-inch to a 24-inch pipe, and from a 30-inch to a 24-inch pipeline under Walnut Avenue. They reset the headgate and pipes at a lower level. The open ditch on the Harmon property was destroyed and there was substituted a 24-inch concrete pipe about 36 feet or more in length and laid somewhat deeper so as to connect the two culverts to it. The Harmons then covered the pipes on their land with soil, and farmed that corner portion. They did not obtain water through this source.

The trial court found that plaintiffs possessed easements across said highway and property, as first indicated and in said dimensions, for the purpose of irrigation of their lands.

It appears from the testimony, although contradicted, that no difficulty previously ensued in reference to passage of the usual amount of water through said culverts and through the Harmon ditch to properly irrigate the Enos and Mattos properties, but after this reduction in size of these culverts and the installation of the pipe on the Harmon property the first head of water, when reaching the first culvert, started backing up in the ditch on the Crawford property, overflowed its banks, and flooded their property and around their home; that Crawford tried to repair the overflowing ditch without success and he then turned off the water at the headgate to prevent damage to his home and property; that a dispute then arose between the other plaintiffs and the Harmons about their inability to obtain sufficient water for irrigation, and no satisfactory arrangements were reached. This action was instituted in October, 1954.

Enos testified that since he started using the ditch in 1917, he previously had no trouble obtaining sufficient water to irrigate his ranch in 11 hours, but under the changed conditions the flow, when available, was so diminished it took

him many hours longer; that he was compelled to buy additional pump water from a near-by neighbor, and was paying for it by the hour, but even so his vineyard crop failed because of lack of water due to his inability to obtain it in sufficient quantity to irrigate the entire acreage; and that he was compelled to install his own pump.

Mattos testified he was not using the water the day it was shut off by Crawford but Enos was; that no water came down the ditch to his pump the next day nor within one month thereafter; that he was compelled to pump his own water for irrigation purposes, taking at least 100 hours to irrigate, and that he could previously irrigate with the ditch water much faster (18 hours); that since the installation of the 24-inch culvert pipes there was not enough force to the water to cause it to go down to the Enos property.

Defendants produced engineers who testified that formerly the culvert pipes were partially filled with sand and debris, which lessened the probable volume of water, and that the installation of the new culverts and pipe did not lessen the flow from that which previously existed; that there was sufficient flow to properly and adequately irrigate plaintiffs' property at all times; and that they suffered no damage by reason of the change.

The court found generally in favor of plaintiffs and against defendants' contention, and specifically found that the prior installation and ditch conveyed sufficient water for irrigation of the Enos and Mattos property; that such uninterrupted use continued in excess of five years and they acquired an easement accordingly; that defendants so changed the nature of said easements in the manner indicated to the detriment of plaintiffs; that although the road superintendent reported to the county that said work was done as an emergency, there was, in fact, no emergency of any kind; that the acts of defendants were arbitrary and capricious; that plaintiffs were, in a large degree, dependent on the water through this ditch to irrigate their farms, and accordingly a proportionate loss of crops resulted. It was found that Enos suffered damage in the sum of $750, Mattos in the sum of $300, and because of the flooding of the Crawford property they were damaged in the sum of $10. Judgment was entered against defendants accordingly. The decree quieting plaintiffs' title to an easement for ditch purposes, as theretofore existed, over the Harmon property, and to a 36-inch and 30-inch culvert under the said highways was entered. A mandatory injunction was

issued compelling the defendants to restore said ditch and culvert to their original size and location. Permission was allowed to use all concrete pipe instead of corrugated. There was an additional decree that defendants have no right or title to said ditch and culverts and they were permanently enjoined from thereafter interfering with said easement in any manner.

It appears to us that this latter decree was too extensive and somewhat beyond the power of the court to grant, particularly since it relates to the future improvement of the public highways. It should be and is therefore stricken from the decree. Injunction process ought never to go beyond the necessities of the case and only to the extent required to preserve the rights of all parties. (*Anderson* v. *Souza,* 38 Cal.2d 825 [243 P.2d 497].

Defendants' brief sets forth many claims as to why the judgment should be reversed. Mainly, it consists of the argument that the evidence and findings are insufficient to support a mandatory or a prohibitory injunction, or the judgment as entered. It appears to us from the record and testimony related, though conflicting, with the exception noted, that there was sufficient evidence to support the judgment and order. (*Whalen* v. *Ruiz,* 40 Cal.2d 294, 302 [253 P.2d 457]; *Allen* v. *San Jose Land & Water Co.,* 92 Cal. 138 [28 P. 215, 15 L.R.A. 93]; *Montecito Valley Water Co.* v. *City of Santa Barbara,* 144 Cal. 578 [77 P. 1113].)

It is also argued that the court failed to definitely describe the nature and extent of the easement of water flow which plaintiffs had used and to which they were entitled, and that it disregarded defendants' evidence on the subject, citing *Strong* v. *Baldwin,* 137 Cal. 432 [70 P. 288]. It was definitely shown by the evidence that the previous installation, as indicated and described in the findings, was sufficient to irrigate plaintiffs' land within the time indicated, and that the smaller installations were not. There was sufficient definiteness in the findings and judgment to describe the course and to determine the possible maximum previous water flow. (*Oliver* v. *Agasse,* 132 Cal. 297, 300 [64 P. 401]; *Morris* v. *George,* 57 Cal.App.2d 665, 672 [135 P.2d 195].)

Next, it is suggested that the injunction was unauthorized, and that plaintiffs' only remedy was an action for damages, since the evidence showed the old culverts constituted a traffic hazard and their removal and reinstallation was a completed public improvement, citing *People* v. *Olsen,* 109 Cal.

App. 523, 530 [293 P. 645]; *Anderson* v. *Fay Improvement Co.*, 134 Cal.App.2d 738 [286 P.2d 513]; and *Beals* v. *City of Los Angeles*, 23 Cal.2d 381 [144 P.2d 839].

The court found, with sufficient evidentiary support, that the former culverts were not damaged or in a deteriorated condition and did not constitute a traffic hazard; that the culverts were removed by the road superintendent and road district supervisor without consulting the irrigation district or the engineering department of the county; that their claim that it was an emergency authorizing such action was untrue; that it was not in fact an emergency and was not for a public use but was done without proper authorization, arbitrarily and in conjunction with and at the request of the defendants Harmon.

It then found that plaintiffs could not be adequately compensated by money for future damages from said change in culverts. Under the circumstances it could not reasonably be said that an inverse condemnation resulted for which plaintiffs' only remedy was damages. (*Gravelly Ford Canal Co.* v. *Pope & Talbot Land Co.*, 36 Cal.App. 556, 559 [178 P. 150]; *Nickey* v. *Stearns Ranchos Co.*, 126 Cal. 150, 152 [58 P. 459].) It was recognized in *Hillside Water Co.* v. *City of Los Angeles*, 10 Cal.2d 677, 688 [76 P.2d 681], that under certain circumstances prohibitory relief is authorized. To the same effect is *Beals* v. *City of Los Angeles, supra,* page 388. The authorities relied upon by defendants are factually dissimilar.

Attack is made on the award of damages to the Enoses and Mattoses claiming the evidence did not support damages in the amounts found, and that the findings do not disclose that the proper measure was applied as indicated in *Staub* v. *Muller*, 7 Cal.2d 221, 228 [60 P.2d 283]; and 14 California Jurisprudence 2d page 801, section 166.

The court did find that by reason of the unauthorized change in the culverts and ditch these plaintiffs did suffer damage by reason of the restricted flow of water to their growing crops of alfalfa, vineyards and grape crops. The evidence does show that Enos paid certain bills in irrigating his own property when he was unable to obtain sufficient water from the ditch, and paid Mattos $50 for use of his pump for 50 hours, plus taxes of $60 to the irrigation district; that the gross yield from his vineyard, in 1954, was less than the normal yield in a specified amount, and that he employed extra help at 85 cents per hour for an undetermined time.

As to Mattos, the general evidence is that his 30 acres were

planted to alfalfa, oats and vineyards; that due to lack of ditch water in 1954 he had to operate his pump an average of 100 hours on three occasions, and figured his cost at $1.00 per hour; that the reasonable rental value of his 24 acres of alfalfa and oats in 1954 with ditch water furnished was $35 per acre, and without it $25 per acre. It is true the record does not reveal the precise manner in which the court arrived at the amount of damages found due. No request was made for specific findings on the subject. This would appear to be necessary. (*Staub* v. *Muller, supra,* 7 Cal.2d 221.)

It affirmatively appears that the court fairly named the amount of the actual injury claimed to have been suffered. Although it was difficult to completely follow the measure used there was sufficient evidence to support it. The question whether defendants used reasonable efforts to minimize the damage was for the trial court to determine. The $10 damage awarded to the Crawfords was supported by a sufficient showing. The closing testimony at the trial shows that defendants Harmon complied with the terms of the injunction and reinstated the ditch on their land as it previously existed. This portion of the injunction has probably become moot. (*Jennings* v. *Strathmore Public Utility Dist.,* 102 Cal.App.2d 548 [228 P.2d 838].)

Judgment affirmed as modified. Plaintiffs to recover costs on appeal.

Barnard, P. J., and Mussell, J., concurred.