[No. B016405. Second Dist., Div. Six. Aug. 1, 1986.]

AMERICAN PAPER & PACKAGING PRODUCTS, INC.,
Plaintiff and Appellant, v.
AFTON KIRGAN et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for partial publication. The portion of the opinion to be published follows.

**COUNSEL**

Frank Anton Gunderson for Plaintiff and Appellant.

Kohlbrand, Suttora & Lambert and David J. Suttora for Defendants and Respondents.

**OPINION**

**BECK, J.**\*—Appellant, American Paper & Packaging Products, Inc., (hereinafter appellant) appeals from an order denying application for preliminary injunction. Appellant sought to enjoin respondents, Afton Kirgan and Cimbria Anderson (hereinafter respondents), from soliciting appellant's customers and disclosing appellant's customer list and other business information to its competitors. And it is urged by appellant that we issue an order enjoining the aforesaid conduct of respondents pending further action of the matter in the court below. For the reasons following, we will decline appellant's invitation.

### STATEMENT OF FACTS

Respondents entered into written salespersons agreements with appellant in 1984 (Kirgan) and 1985 (Anderson). The agreements are identical and contain the following pertinent provisions: "7. RESTRICTIONS ON USE OR DISCLOSURE OF CUSTOMER LIST AND OTHER INFORMATION. For a period of 3 years immediately following termination of this agreement, S-C [subcon-

---

*Assigned by the Chairperson of the Judicial Council.

tractor] shall neither call on or solicit, either for himself or for any other person or firm, any of the customers of CONTRACTOR whom S-C called, on whom S-C called, with whom S-C became acquainted, or of whom S-C learned during his retention hereunder, nor shall S-C make known to any other person or firm, either directly or indirectly, the names, addresses or telephone numbers of any such customers or any information relating in any manner to CONTRACTOR's trade or business relationship with such customers. All lists, books, records, and accounts relating in any manner to CONTRACTOR's customers, whether prepared by S-C or otherwise coming into S-C's possession, shall be the exclusive property of CONTRACTOR and shall be returned immediately to CONTRACTOR on termination of this agreement or on CONTRACTOR's request at any time."

On or about August 17, 1985, respondent Kirgan stopped working on behalf of appellant with respondent Anderson following suit on or about August 20, 1985. Respondents allege that a dispute arose over proper payments on commissions, and when they complained they were asked to leave appellant's employ.

Within a short time, both respondents secured employment with a competitor of appellant as salespersons.

Appellant alleges that respondents were soliciting customers from customer lists maintained by appellant. Appellant alleges further that the names, addresses and telephone numbers of its customers were obtained by respondents from the lists, books, records and accounts provided by Cal Pack prior to their termination and further that respondents have made such lists, books and records available to appellant's competitors in violation of the aforementioned agreement.

Respondents allege that any such customer lists were developed as fruit of their own labor and deny that, with the exception of three names of potential customers, they were given lists or files or other information on any actual or potential customers by appellant. Respondents further set forth in their respective declarations the means utilized to formulate and update such lists. These methods included visiting communities in their sales area and going into the areas zoned for industry in these communities. While driving in these zoned areas, they would locate what appeared to be manufacturing companies and make a list of these companies. They would then make "cold calls," described as an unscheduled visit to the company, in an attempt to talk to a representative and hopefully establish a buy/sell relationship. Respondents deny having any secret list of any specified cus-

tomers of appellant and deny having been given any secret sales techniques or information by appellant.

Respondents assert they intend to call on every manufacturer that they can and are not singling out any specific customers or former customers of appellant. Respondents indicate that due to the highly competitive nature of the business, emphasis is placed on price, speed and quality of product. Long term relationships between manufacturers and shipping supply companies do not exist, and manufacturers generally do not order all their shipping supplies and containers from any one company. Thus, respondents argue, the need exists to call on as many customers as possible as often as possible or one cannot survive as a salesperson in this industry.

Appellant agrees that quality, reliable delivery and efficient service are factors used by customers in choosing a custom packaging material company. It asserts, however, that an equally important factor is the packaging material company's understanding of the special requirements needed to package a particular product.

Appellant claims that "[once] a customer relationship is established for some time a customer will often buy all of his packaging material from the same custom packaging vendor . . ."; and alleges that 95 percent of Cal Pack's customers give them repeat business.

The court is called upon to balance the protections provided a former employee under Business and Professions Code section 16600 against the protections provided a former employer to confidential information and trade secrets.

With certain exceptions not relevant here, Business and Professions Code section 16600 provides that, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

This provision has been construed by the California Supreme Court as invalidating contracts not to compete unless their enforcement is necessary to protect an employer's confidential information or trade secrets. (*Muggill* v. *Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147, 18 A.L.R.3d 1241].)

In 1984, California adopted the Uniform Trade Secrets Act (hereinafter UTSA) and codified same in Civil Code section 3426 et seq. California Civil Code section 3426.1, subdivision (d), defines trade secret as "infor-

mation, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

As no court has specifically decided whether "customer lists" can qualify as trade secrets under the recently enacted UTSA, the respondents urge that the question is one of first impression. (The court is mindful of the recent First District Court of Appeal decision in *Moss, Adams & Co.* v. *Shilling* (1986) 179 Cal.App.3d 124 [224 Cal.Rptr. 456], wherein the court discussed the use of customer lists in a different context but did not deal squarely with the issue presented here.)

Respondents first argue that the Legislature was surely mindful of the massive volume of litigation concerning nondisclosure of customer lists. Thus, their failure to specifically encompass customer lists in their definition of trade secrets as set forth in Civil Code section 3426.1, subdivision (d), *supra,* must indicate their intent to exclude it.

Respondents argue further that the only noun set forth in section 3426.1, subdivision (d), that could possibly be reflective of a customer list is "compilation." Defining "compile" according to Webster's Ninth New Collegiate Dictionary (1983) at page 268, as: "1: to collect and edit into a volume 2: to compose out of materials from other documents," respondents assert that for appellant to prevail it must prove that its lists of customers were collected into volumes or composed out of materials from other documents. Thus, argue respondents, since factually appellant cannot do the latter, under either theory, Civil Code section 3426.1, subdivision (d), is inapplicable and the court should decide this case under post UTSA law.

Appellant argues that the case should be decided under the UTSA and the court below erred in not doing so. Appellant feels that had the court applied the two-prong test set forth in Civil Code section 3426.1, subdivision (d), rather than the five-prong test in *Aetna Bldg. Maintenance Co.* v. *West* (1952) 39 Cal.2d 198, 204, 205 [246 P.2d 11], or the three-prong test in *Hollingsworth Solderless Terminal Co.* v. *Turley* (9th Cir. 1980) 622 F.2d 1324, it would have prevailed.

■ We cannot agree with respondents' argument that the Legislature's failure to include customer lists in its definition of trade secrets represents an intentional exclusion of same. The very language of Civil Code section

3426.1, subdivision (d), is inclusive, not exclusive. ("[I]nformation, *including* a formula, [etcetera]." (Italics added.)) The legislative intent was to codify the results of the better-reasoned cases concerning the remedies for trade secret misappropriation and thus provide for a more uniform application in the area of misappropriation through improper means of trade secrets. (UTSA, 14 U. Laws Ann. 537, 538.)

Nor do we agree that in order for appellant to prevail, its interest must fit into the factual context of "compilation" as that word is defined by Webster's. "Compile" as defined in the American Heritage Dictionary (2d ed. 1982) at page 301, is: "1. To gather into a single book. 2. To put together or compose from materials gathered from several sources . . . ." Compilation of data, as common usage of this term indicates, can come from any source, not necessarily documents. It is as readily storable in one's memory as in some written form. Given the wealth of case law holding that customer lists can be trade secrets (see, e.g., the list of cases in 28 A.L.R.3d 7), it is difficult to accept respondents' argument, and indeed we decline to do so.

Respondents' reliance on the so-called five-prong test set forth in *Aetna Bldg. Maintenance Co. v. West, supra,* 39 Cal.2d 198, 204, 205, or the three-prong test set forth in *Hollingsworth Solderless Terminal Co. v. Turley, supra,* 622 F.2d 1324, is misplaced. *Aetna* and *Hollingsworth* were decided before the adoption by this state of the UTSA and enactment of statutes codifying same.

Prior to the adoption of the UTSA, decisions in the area of customer lists as trade secrets were founded on equitable principles of common law. To a large extent, those principles have been engrossed by the UTSA. However, to the extent that the *Aetna* case and its progeny and *Hollingsworth* set forth rules in conflict with the dictates of the UTSA, they no longer control.

▮ Finding that customer lists can be protectable trade secrets, we now deal with the specific facts presented to determine that application here. Our inquiry under Civil Code section 3426.1, subdivision (d), is twofold. ▮ Are these customer lists the sort of information that derive "independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from [their] disclosure or use?" And, are they "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy?" In order for appellant to prevail, it must affirmatively show the existence of both elements.

▮ Counsel for both sides here attempt to argue facts not supported by the evidence presented below. We are bound, however, by the actual

evidence presented, which in this case consisted of declarations of appellant and respondents and copies of the aforementioned employee agreements. No other testimony or evidence was presented at the hearing below.

To support its contention of confidentiality in its customer lists, appellant points to the terms of the employee agreements. These agreements purport to make respondents subcontractors of appellant. Term 6, subdivision d, of the employee agreements states: "[t]he parties hereby stipulated [*sic*] that, as between them, the foregoing matters are important, material, and confidential and gravely affect the effective and successful conduct of the business of CONTRACTOR, and its goodwill, . . ." The "foregoing matters" referred to included any list of names, addresses or telephone numbers of customers whether compiled by the subcontractor or provided to subcontractor by the contractor and any "information concerning the business of CONTRACTOR, . . . its plans, processes, or other data of any kind, . . ."

Appellant thus urges that respondents were made aware of the cloak of confidentiality placed on such lists by appellant and should be required to abide by the terms of the agreement restricting their use.

Appellant's reliance on the language of the employee agreements is not helpful. An agreement between employer and employee defining a trade secret may not be decisive in determining whether the court will so regard it. (*State Farm Mut. etc. Ins. Co.* v. *Dempster* (1959) 174 Cal.App.2d 418, 426 [344 P.2d 821].) The court should view all of the evidence presented in making its determination.

To further show the requisite confidentiality of the customer lists, appellant points to its declaration submitted below. In said declaration, appellant states that "the lists, books, records, and accounts" were "provided by Cal Pack . . . ." And, by permissible inference appellant alleges that these items contain information concerning "special requirements needed to package a particular product . . ." shipped by his various customers.

In response to these arguments, respondents deny that the lists in question, with the exception of three names, were provided to them by appellant. They claim, as previously indicated, that they compiled the lists from their own efforts. In declarations which were basically identical in context and content, respondents also deny ever having any secret sales information pertaining to any of the companies they called on as subcontractors for appellant. They further deny that they are singling out any specific customers of appellant but are calling on every manufacturer they can, just as they did for appellant. They claim the need to call on as many customers as

possible because there is no long term relationship between a manufacturer and shipping supply company. They also claim that manufacturers will order from more than one shipping supply company at any given time with the manufacturers' emphasis being on price, speed and quality of product.

In viewing the evidence presented in the light most favorable to the prevailing party, it is difficult to find a protectable trade secret as that term exists under Civil Code section 3426.1, subdivision (d). While the information sought to be protected here, that is lists of customers who operate manufacturing concerns and who need shipping supplies to ship their products to market, may not be generally known to the public, they certainly would be known or readily ascertainable to other persons in the shipping business. The compilation process in this case is neither sophisticated nor difficult nor particularly time consuming. The evidence presented shows that the shipping business is very competitive and that manufacturers will often deal with more than one company at a time. There is no evidence that all of appellant's competition comes from respondents' new employer. Obviously, all the competitors have secured the same information that appellant claims and, in all likelihood, did so in the same manner as appellant—a process described herein by respondents. Though appellant claims a 95 percent repeat business and that once a good relationship is established the customer usually deals only with one shipper, he does not show that the 95 percent repeat business is exclusive, and he cites no examples of exclusive business relationships.

██ Injunctive relief should only last as long as is necessary to preserve the rights of parties. (*Enos* v. *Harmon* (1958) 157 Cal.App.2d 746, 750 [321 P.2d 810].) ██ The general principle set forth under Civil Code section 3426.2, subdivision (a), is that an injunction should last only as long as is necessary to eliminate the commercial advantage that a person would obtain through misappropriation. Thus, an injunction should terminate when what once might have been a trade secret becomes known to good faith competitors. ██ It follows that if the information is generally known in the trade and *already used* by good faith competitors, it is not a protectable trade secret and injunction should not issue.

Appellant inferentially claims that the information sought to be protected here includes the special packaging requirements of some of the manufacturing companies, but he fails to further support or substantiate this inference in any way. And respondents deny it.

Thus the court below did not err in determining the absence of a protectable interest here.

. . . . . . . . . . . . . . . . . . . . . . . . . .*

The order issued by this court on October 31, 1985, modifying and reinstating the restraining order of the Ventura County Superior Court dated August 29, 1985, is hereby dissolved.

The order denying preliminary injunction is reinstated and affirmed.

Each party to bear their own costs and attorney fees on appeal.

Stone, P. J., and Gilbert, J., concurred.

---

*See footnote, *ante*, page 1318.