977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
WARMAN INTERNATIONAL LTD., a business; Peko-Wallsend
Operations Ltd., a business, Plaintiffs-Appellees,
v.
RM-HOLZ, INC., a business, Defendant-Appellant.
 No. 92-15585.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1992.
Decided Oct. 14, 1992.
 
 Before FERGUSON, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 RM-Holz, Inc. appeals the denial of its motion to limit duration of a preliminary injunction issued in favor of Warman International Ltd. Warman manufactures slurry pumps used in mining operations. Holz began manufacturing replacement parts for Warman pumps using molds, patterns, and drawings it purchased from Amalgamated Mining Services Pty. Ltd. Warman sued Holz for misappropriation of trade secrets under the Uniform Trade Secrets Act, Cal.Civ.Code §§ 3426 et seq., and unfair competition under the Unfair Practices Act, Cal.Bus. & Prof. Code §§ 17000 et seq., alleging that the materials Holz purchased were derived from drawings stolen from Warman. The district court granted a preliminary injunction prohibiting Holz from manufacturing, distributing, or selling nine types of parts, but provided that Holz might seek to limit its duration by noticed motion to Magistrate Judge Brennan. Holz later so moved as to four parts. The magistrate judge found that absent a full development of the case and a trial of disputed facts such as whether the disputed materials contain trade secret information, whether the parts can be reverse engineered and if they can be, how long it would take, whether Holz acted in good faith, and whether money damages will be adequate to compensate Warman for any damages caused by Holz, it would be premature to conclude that any particular period of restraint is appropriate. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), and we affirm.
 
 
 3
 Holz first urges us to review the propriety of the preliminary injunction itself as well as the denial of its motion to modify. We decline to do so, because Holz failed to appeal the district court's order. This appeal is therefore limited to the magistrate judge's denial of its motion to limit duration. Gon v. First State Ins. Co., 871 F.2d 863, 866 (9th Cir.1989).
 
 
 4
 On that point, Holz relies on K-2 Ski Co. v. Head Ski Co., 506 F.2d 471 (9th Cir.1974) to argue that a preliminary injunction in a misappropriation of trade secrets action should last only for the time advantage gained by the misappropriator. Warman argues that K-2, which did not interpret California law, is not controlling and the magistrate judge did not err in failing to apply it; rather, it suggests, duration of injunctive relief is properly measured by the time it takes to prevent the misappropriator from reaping commercial advantage. Cf., e.g., Boeing Co. v. Sierracin Corp., 738 P.2d 665, 681 (Wash.1987) (approving permanent injunction for life of trade secret to prevent misappropriator from gaining commercial advantage). The magistrate judge declined to adopt either standard, concluding instead that the scope of relief had to abide resolution of the underlying issues.
 
 
 5
 In K-2, the district court had permanently enjoined Head from using one of K-2's trade secrets for two years and another, for one year. We affirmed, holding that the appropriate duration for the injunction in that case should be the period of time it would have taken the misappropriator to develop its product legitimately without use of its competitor's trade secrets. Id. at 474. We also indicated that the effect of the period of time preliminary relief had been in force, together with the purposes it had served, should be considered in determining the appropriate duration of permanent relief. Id. at 475.
 
 
 6
 K-2 is not dispositive in this case. First, we were not applying California law, which has, in any event, been changed in the meanwhile by adoption of the Uniform Trade Secrets Act. The UTSA indicates that the purpose of an injunction is to "eliminate the commercial advantage that a person would obtain through misappropriation." American Paper & Packaging Prods., Inc. v. Kirgan, 228 Cal.Rptr. 713, 718 (Cal.Ct.App.1986); see also Cal.Civ. Code § 3426.2; cf. Boeing, 738 P.2d at 681 (applying Washington law, as we were in K-2, but after Washington adopted the UTSA). The magistrate judge did not abuse her discretion in considering that the duration of injunctive relief in this action should be informed by such factors as the adequacy of money damages and Holz's good faith in purchasing the AMS drawings.
 
 
 7
 As the magistrate judge also noted, K-2 arose on a fully developed record, after trial on the merits. See id. at 474. Other cases upon which Holz relies did too. See Winston Research Corp. v. Minnesota Mining & Mfg. Co., 350 F.2d 134, 141-42 (9th Cir.1965); Anaconda Co. v. Metric Tool & Die Co., 485 F.Supp. 410, 431 (E.D.Pa.1980); Plant Indus., Inc. v. Coleman, 287 F.Supp. 636, 645 (C.D.Cal.1968). Although K-2 held that a district court should insure that relief provided by a permanent injunction has not already been afforded by the preliminary injunction, see 506 F.2d at 475, it did not hold the converse as well: that the district court must predict all the bases for permanent relief in fashioning preliminary relief. Further, K-2, Winston, Anaconda, and Plant approve, but do not require, injunctions limited to how long reverse engineering or independent development would take. Finally, the magistrate judge properly acknowledged the difference between preliminary injunctions, whose purpose is to "preserve the relative positions of the parties until a trial on the merits can be held," University of Texas v. Camenisch, 451 U.S. 390, 395 (1981), and permanent injunctions, whose purpose is to effectuate final equitable relief.[1]
 
 
 8
 Nor can we say the magistrate judge abused her discretion even under K-2's "independent development" test, because she could reasonably find that a further factual record was required. Evidence by Holz's expert, Dr. Iain Finnie, that reverse engineering would take no longer than "eight man-hours, and possibly significantly less, per part," and that wooden patterns for metal parts and molds for rubber parts could be fabricated in two to four days per part, depending on how quickly Holz wanted to expedite production, was offset by declarations tending to show that parts fabricated from reverse engineered drawings would not necessarily work the first time, and questioning whether the AMS drawings were in fact reverse engineered.
 
 
 9
 None of the other arguments made by Holz persuades us that the court abused its discretion.
 
 
 10
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Warman's request for injunctive relief was based on the Unfair Practices Act as well as the Uniform Trade Secrets Act. See Courtesy Temporary Serv. v. Camacho, 272 Cal.Rptr. 352, 360 (Cal.Ct.App.1990) (injunction can issue for unfair practices under UPA relating to theft of confidential information even if it could not be based on trade secrets under UTSA). This further militates in favor of waiting for a trial on the merits