[No. B115097. Second Dist., Div. Six. Aug. 11, 1998.]

Estate of GEORGE RAYMOND GILKISON, Deceased.
JAMES L. GILKISON, as Executor, etc., Petitioner and Respondent, v.
C. RUSSELL KING, Claimant and Appellant.

**COUNSEL**

C. Russell King, in pro. per., for Claimant and Appellant.

James L. Gilkison, in pro. per., for Petitioner and Respondent.

OPINION

YEGAN, J.—C. Russell King, an attorney, purports to appeal from the 1997 order approving the final distribution of the assets in the estate of George Raymond Gilkison. However, he raises no issues relating to the final distribution. Instead, he contends that the trial court abused its discretion in 1994 by denying his request for $4,078.51 in extraordinary fees. Given the facts and circumstances as well as time-honored rules, his contention is not only without merit, it is frivolous. We affirm and impose sanctions.

*Facts and Proceedings*

In April of 1991, George Raymond Gilkison died testate, leaving a small house and furniture to his three sons, William, James, and Robert Gilkison. His last will and testament designated James, respondent, as executor.

The heirs agreed that Robert would purchase the house, which had an appraised value of $130,000. Robert agreed to obtain a loan to pay William and respondent for their one-third interest. Pursuant to the sons' agreement, respondent then conveyed the real property to Robert by executor's grant deed.

On June 28, 1993, appellant, an attorney retained by the executor, filed a first and final report on behalf of the executor, setting forth the agreed disposition of the estate. Appellant requested statutory fees in the amount of $3,823.74, costs totaling $97.75, and extraordinary fees of $4,078.51.[1] Appellant claimed that respondent had orally agreed to pay him a total of $8,000 for statutory and extraordinary fees, and that he had performed extraordinary services by facilitating Robert's purchase of the real property.[2]

On October 29, 1993, the probate court denied appellant's request for extraordinary fees. Thereafter, on November 15, 1993, appellant moved to vacate the court's order pursuant to Code of Civil Procedure section 663. The court entertained the motion, treated it as a request for reconsideration,

---

[1]Attorneys who probate estates are statutorily entitled to compensation based upon a sliding scale of percentages of the value of the estate. This fee is known as a "statutory" or "ordinary" fee for services rendered in the typical probate case. Attorneys may also be entitled to compensation for services which are not involved in the typical probate case. For unusual services, the probate court may allow additional compensation for extraordinary services. This is known as an "extraordinary" fee. (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 895 [52 Cal.Rptr.2d 491].)

[2]Agreements between probate counsel and the estate representative for compensation exceeding that allowed by statute are void as against public policy. (Prob. Code, § 10813.)

and allowed appellant additional time to submit points and authorities. In a supplemental declaration, appellant stated he had incurred over $12,000 in extraordinary fees.

On January 7, 1994, the court conducted a hearing on the motion. At this time appellant expressly advised the trial court that he was "broke" and that he took the $8,000 in anticipation that the court would grant extraordinary fees.[3] On February 9, 1994, the court again denied appellant's request for extraordinary fees. The court reasoned: "1. There was no agreement by the executor . . . to pay Mr. King any fees beyond those statutorily authorized; [¶] 2. Much of the claimed extraordinary fees did not advance the interests of the estate or its beneficiaries. In fact, they may have resulted from advice of counsel [Mr. King] which actually delayed distribution of this estate, and prevented the testator's desires from being carried out. . . . [¶] 3. The only services for which extraordinary fees could be granted would be facilitating Robert Gilkison's purchase of the estate's realty. The court finds he has not met his burden in showing any efforts he expended contributed to the necessary re-financing."

The court ordered appellant to return all remaining estate assets to the executor, less the amount allowed for statutory fees, and directed the clerk to provide notice of the court's order. ██ ██ The clerk did so.[4]

On November 26, 1996, respondent filed an "amended first and final report of executor." He stated that the only asset remaining in the estate was a checking account with a balance of $7,972, which appellant improperly appropriated in anticipation of the court's approval of his request for extraordinary compensation. Respondent explained that as a result of proceedings before the State Bar Court, in January of 1996, appellant was ordered to place the sum of $3,919.00 ($7,972 less the amount the trial court allowed appellant for statutory fees and costs) in a two-party trust account pending final order of the probate court. Respondent stated that the trust account

---

[3]On February 24, 1997, he told the trial court that he took the money because he was broke and to make sure that he would obtain review by the California Supreme Court.

His opening brief recites: "Because Appellant considered the courts to be out of control, and because Appellant believes there is chaos in civil law courts, and because of the disorder and injustice in this case, Appellant withdrew a total of $8,000.00 from his Trust Account without Court Order in order to obtain a mandatory review by the Supreme Court."

[4]The trial court took a dim view of appellant's appropriation of the approximately $8,000 remaining in the estate. In fact, it reported appellant to the California State Bar for taking the money without notice to the court, the executor, or the heirs. We commend the trial court for doing so. Where, as here, there is a probable cause to believe that an attorney has breached a fiduciary obligation, judicial officers should report the attorney to the California State Bar. (See Rules Proc. of State Bar, rule 2403(d); see also 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 636, pp. 749-750.)

represented the only asset left in the estate, and he requested that the court order the funds distributed to him.

On February 25, 1997, the trial court approved the final accounting and petition for final distribution submitted by respondent. The court ordered the funds in the trust account distributed to respondent and ordered appellant to cooperate in the transfer of the funds. This appeal followed.

### Trial Court Discretion to Allow Extraordinary Fees

■ The law with respect to the allowance of fees claimed for extraordinary services rendered in probate proceedings is well settled. The grant or denial of such fees is addressed to the sound discretion of the probate court. (Prob. Code, § 10811, subd. (a); *Estate of Trynin* (1989) 49 Cal.3d 868, 874 [264 Cal.Rptr. 93, 782 P.2d 232]; *Estate of Hilton, supra,* 44 Cal.App.4th 890, 914; *Estate of Downing* (1982) 134 Cal.App.3d 256, 266-267 [184 Cal.Rptr. 511]; see also 12 Witkin, Summary of Cal Law (9th ed. 1990) Wills and Probate, § 510, p. 531 ["The wide discretion of the probate court in the allowance and the amount of such fees will mostly be upheld."].) "If, under all the relevant circumstances, the amount awarded as ordinary compensation is fair and reasonable for all the attorney services, the court may disallow a request for extraordinary compensation even though some extraordinary services have been performed." (*Estate of Trynin, supra,* 49 Cal.3d at p. 874.)

### Abuse of Discretion on Appeal

■ An attorney who prosecutes an appeal from an order addressed to the trial court's sound discretion is confronted with more than a daunting task. This is an uphill battle which, absent unusual circumstances, may be equated with confederate General John Bell Hood's attempt to capture "Little Round Top" at the battle of Gettysburg in the Civil War. General Hood did not succeed. (J.B. Hood, Advance and Retreat (Blue and Grey Press 1985) pp. 59-60.)

Appellant does not succeed because of the factual record on appeal and time-honored precedents. ■ " 'The term [judicial discretion] implies the absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. [Par.] To exercise the power of judicial discretion all the material facts in evidence must be known and considered, together also with the legal principles essential to an informed, intelligent and just decision.' [Fn. omitted.]" (*In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307,

490 P.2d 819]; see also *In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200 [280 Cal.Rptr. 565].) "The appropriate [appellate] test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339]; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

A ". . . showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice . . . ." (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)

██ There may be instances where an appellant could demonstrate that the probate court abused its discretion as a matter of law. For example, had the trial court indicated that the request for extraordinary fees was denied because it "never" grants such fees, or because it believes that the proponent bears the burden of proof beyond a reasonable doubt and has failed that burden, or because the estate must be over an arbitrary amount, e.g., $1 million, for there to be extraordinary fees, then an abuse of discretion would be demonstrated.

Here, however, the trial court articulated a sound factual basis for the denial of extraordinary fees. The record unquestionably shows that the probate court did not misunderstand the law with respect to extraordinary fees. Appellant does not even attempt to demonstrate just how the trial court abused its discretion in this case. He conclusionally states that the trial court disregarded the law and was prejudiced against him. Given the facts and circumstances as well as the precedents which govern review, this appeal was "dead on arrival" at the appellate courthouse.

We also observe that trial attorneys who prosecute their own appeals, such as appellant, may have "tunnel vision." Having tried the case themselves, they become convinced of the merits of their cause. They may lose objectivity and would be well served by consulting and taking the advice of

disinterested members of the bar, schooled in appellate practice. We suspect that had appellant done so they would have advised him not to pursue this appeal. "This case . . . lacks merit, and we cannot conceive of a reasonable attorney who would disagree with this appraisal." (*McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 106 [257 Cal.Rptr. 473].)

Here, the trial court reasonably concluded, based on the value of the estate and appellant's services which delayed distribution of the estate, that the ordinary compensation allowed by statute was adequate. (E.g., *Estate of Walker* (1963) 221 Cal.App.2d 792 [34 Cal.Rptr. 832].) ■■ ■ Appellant has not demonstrated that this discretionary decision exceeded the bounds of reason or was arbitrary, capricious, or whimsical.[5]

## Sanctions

 Respondent, in propria persona, claims that the appeal is frivolous and that appellant should be "punished." He has conclusionally requested sanctions in the amount of $5,000. We agree that the appeal is frivolous because ". . . no reasonable attorney could have thought it meritorious . . . ." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179]; see also Code Civ. Proc., § 907.) However, respondent has not complied with California Rules of Court, rule 26(e) and there is no basis to determine the appropriate amount of a sanctions that theoretically could be awarded him. We also observe that appellant has been disciplined by the California State Bar for his early taking of extraordinary fees.

---

[5]We have decided the case on the merits. However, we also observe that appellant is precluded from challenging the order in this appeal. As noted above, the court denied appellant's request for extraordinary fees in a minute order on February 9, 1994, reaffirming its earlier ruling. The clerk provided notice of entry of the order on February 10, 1994. The order was appealable at that time under Probate Code former section 7240, subdivision (l) (now § 1300, subd. (e)), and became final after appellant failed to file an appeal within the time allowed by law. (See Code Civ. Proc., § 904.1, subd. (a)(10); Cal. Rules of Court., rule 2(a).)

The orders listed as appealable in the Probate Code must be challenged timely or they become final and binding. They may not be collaterally attacked in a subsequent appeal from the final order of distribution. (See, e.g., *Estate of Lindauer* (1942) 53 Cal.App.2d 160, 165-166 [127 P.2d 589] [failure to appeal from order approving attorney's fees and costs of estate, which were included in a prior accounting, precludes appellant from challenging these same items on appeal from final accounting]; *Estate of Richards* (1941) 17 Cal.2d 259 [109 P.2d 923] [order approving exchange of real property, which had not been appealed, could not be subsequently challenged on appeal from decree settling final account]; *Estate of Hanley* (1943) 23 Cal.2d 120, 122 [142 P.2d 423, 149 A.L.R. 1250] [order settling the account must be appealed within 60 days from its entry]; accord, *Estate of Roberts* (1945) 27 Cal.2d 70, 76 [162 P.2d 461] [order granting a family allowance may not be attacked collaterally in a subsequent proceeding for distribution of the estate, where no appeal was taken from the order within the time prescribed by law].)

However, respondent is not the only person aggrieved by this frivolous appeal. Those litigants who have nonfrivolous appeals are waiting in line while we process the instant appeal. Several courts have approved of sanctions made payable to the Court of Appeal for the filing of a frivolous appeal. We agree with the rule and rationale of those opinions. (*In re Marriage of Schnabel* (1994) 30 Cal.App.4th 747, 755-756 [36 Cal.Rptr.2d 682] and cases cited therein.)

We advised appellant that we were considering the imposition of sanctions payable to this court and he has been given an opportunity to be heard. In response appellant reiterated his belief that he is entitled to extraordinary compensation for the actual time he devoted to the case. He also verifies his belief that the appeal is meritorious. We do not doubt that appellant believes the appeal to be meritorious or that he devoted the claimed time to the case. However, for the reasons stated in the opinion, appellant's personal views are not controlling. We impose sanctions in the amount of $1,000.

The judgment (order of final distribution) is affirmed. Appellant's request for an order reversing the denial of extraordinary fees is denied. Respondent's request for sanctions payable to him is denied. Appellant is ordered to pay the clerk of this court $1,000 as a sanction for pursuing this frivolous appeal. This sanction shall be paid no later than 30 days after the filing of the remittitur. Respondent is awarded costs on appeal.

Gilbert, Acting P. J., and Coffee, J., concurred.

A petition for a rehearing was denied September 2, 1998.