90 Cal.Rptr.2d 680 (1999)
76 Cal.App.4th 653
ELECTRO OPTICAL INDUSTRIES, INC., Plaintiff and Appellant,
v.
Stephen WHITE, Defendant and Respondent.
No. B133110.
Court of Appeal, Second District, Division Six.
November 30, 1999.
Ordered Not Officially Published April 12, 2000.[*]
*682 K. Andrew Kent; Seed, Mackall & Cole, Santa Barbara, for Appellant.
Brian G. Gough; Howell Moore & Gough, Santa Barbara, for Respondent.
*681 YEGAN, J.
Electro Optical Industries, Inc. (EOI) unsuccessfully appeals from the trial court's order denying its application for a preliminary injunction to prevent the misappropriation of its trade secrets by respondent Stephen White (White), EOI's former sales manager. EOI also prayed for an order precluding White from participating in the sale or development of infrared testing equipment. White is currently employed as sales manager of Santa Barbara Infrared, Inc. (SBIR), a competitor of EOI.
EOI contends the Uniform Trade Secrets Act (Civ.Code, §§ 3426-3426.11 (UTSA),) permits the trial court to enjoin any actual or threatened misappropriation of its trade secrets.[1] (§ 3426.2, subd. (a).) EOI argues the trial court erred in refusing to do so here because the evidence shows that White knows EOI trade secrets and will inevitably use them if permitted to work for SBIR. White contends there is no threat he will misappropriate EOI's trade secrets because he cannot divulge technical information and his nontechnical information is either not confidential or useless to SBIR.

Facts
EOI is a supplier of infrared devices including test equipment sold to the military and defense contractors. Worldwide, only about 100 entities purchase this equipment. EOI and SBIR are among the three to six firms that supply it. Sales are driven by technology and the ability to adapt it to the customers' specific needs and preferences.
For about 15 years, White was the sales manager of EOI's infrared test equipment division. Because he was the key sales contact between EOI and its customers, White knew about EOI's sources of supply, production costs, customer lists and requirements, sales prices and volume, marketing plans and finances. Although White is not an engineer, he also acquired technical information about the design and manufacture of EOI's existing and future products.
In late April 1999, White saw a newspaper advertisement for a sales manager position at SBIR. White interviewed for the job and told SBIR that he was responsible for sales and marketing at EOI and had a significant role in product development. He also told SBIR that he had "knowledge of the market and customer base[,]" and knew "the applications and requirements of the manufacturers and users of [infrared] sensors and sensor systems."
SBIR offered White the job in early May 1999. White's duties at SBIR would include developing a marketing plan for SBIR, developing a profile of SBIR's competitors, "including strengths, weaknesses and relative market position ...," and attempting to increase SBIR's customer base. White would find new customers using public information to create a list of military labs, test facilities, and missile programs. He would solicit those who are not SBIR customers. White also suggested that SBIR sell its components through manufacturers of related, noncompetitive products, sell products made by others *683 under a "private label," and offer SBIR products for use at industry seminars. EOI pursued some of these marketing strategies during White's tenure.
On June 3, 1999, White informed EOI he was accepting the job at SBIR. He left EOI the same day, after signing a "termination statement" at EOI's request. In this document, White stated he understood that, "trade secrets and other proprietary data of EOI belong to EOI and may not be used by me or disclosed by me to any person after termination of my employment." At the same time, EOI served White with the complaint in this matter and an application for a temporary restraining order to enjoin him from working for SBIR, selling any infrared testing equipment, and disclosing or using EOI trade secrets.

Hearing mi Preliminary Injunction
Lisa Fuog, the person in charge of human resources for EOI, declared that White possessed two types of EOI trade secrets. White knows "technical" trade secrets about existing and future product design, production methods, materials and processes, and the status of patent applications. He knows "nontechnical" trade secrets about EOI's customer list, customer requirements, production costs, sales prices and volume, and marketing plans.
EOI contended that White could find comparable and nonobjectionable employment at about 10 high-tech companies in Santa Barbara and Los Angeles. EOI feared that his knowledge of its secrets would allow SBIR to underbid EOI, "devastating" its sales of infrared test equipment. It presented no evidence of the prices of EOI and SBIR products, the frequency with which the firms compete for the same sale, or the extent to which EOI's overall sales would be affected if misappropriation occurred.
White's declaration stated that his knowledge of EOI product design would be of little value in his work at SBIR because he lacks the training necessary to transfer technical information to SBIR. The president of SBIR declared that SBIR had no need or desire for EOI's technology. Only about one-third of SBIR's sales are for products that compete with EOI.
White also denied that he possessed "non-technical" information of use to SBIR. According to White, potential customers for infrared test equipment are well known in this small market. Industry directories and trade publications list the potential customers and suppliers. Every supplier knows who the customers buy from; many customers buy from more than one supplier; all suppliers solicit all customers. Many purchases are made by competitive bid, open to all suppliers. Two annual trade shows provide detailed information about customers and the design and sales price of competing products. Information on sales prices can also be obtained by calling the supplier. SBIR's prices are generally higher than EOI's.
The trial court denied the preliminary injunction. It expressly found that there was no evidence that White had disclosed or used EOI trade secrets or that "he has threatened to use any such information to compete unfairly" with EOI. It also found that White would not inevitably disclose any such information.

Standard of Review
In ruling on a preliminary injunction, the trial court must evaluate two related factors: the likelihood that EOI will ultimately prevail on the merits, and "the interim harm that [EOI] is likely to sustain if the injunction were denied as compared to the harm that [White] is likely to suffer if the preliminary injunction were issued." (IT Corp. v. County of Imperial (1983) 35 Cal.3d 63, 69-70, 196 Cal. Rptr. 715, 672 P.2d 121.) We review the grant or denial of a preliminary injunction for abuse of discretion. (Hilb, Rogal & Hamilton Ins. Services v. Robb (1995) 33 Cal.App.4th 1812, 1819, 39 Cal.Rptr.2d 887.)
*684 EOI has the burden to demonstrate that the trial court's ruling exceeds the bounds of reason or contravenes the uncontradicted evidence. (IT Corp. v. County of Imperial, supra, 35 Cal.3d at pp. 69-70, 196 Cal.Rptr. 715, 672 P.2d 121; Metro Traffic Control, Inc. v. Shadow Traffic Network (1994) 22 Cal.App.4th 853, 857, 27 Cal.Rptr.2d 573; Estate of Gilkison (1998) 65 Cal.App.4th 1443, 1448-1449, 77 Cal.Rptr.2d 463.) Because the trial court denied injunctive relief, the question on appeal "`becomes whether the trial court abused its discretion in ruling on both [the likelihood of success and interim harm] factors.'" (Hilb, Rogal & Hamilton Ins. Services v. Robb, supra, 33 Cal. App.4th at p. 1819, 39 Cal.Rptr.2d 887, quoting Cohen v. Board of Supervisors (1985) 40 Cal.3d 277, 286-287, 219 Cal. Rptr. 467, 707 P.2d 840.)
We view the evidence in the light most favorable to White and draw all reasonable inferences in support of the trial court's order. (Estate of Gilkison, supra, 65 Cal.App.4th at p. 1449, 77 Cal.Rptr.2d 463.) Where the evidence is in conflict, we will not reweigh it or second-guess the trial court's credibility determinations. (Hilb, Rogal & Hamilton Ins. Services v. Robb, supra, 33 Cal.App.4th at p. 1820, 39 Cal.Rptr.2d 887.) Our resolution of the issues presented here does not constitute a final adjudication of the ultimate rights in controversy. (Id.)

Likelihood of Success on the Merits
The UTSA defines a trade secret as information that, "(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [f] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (§ 3426.1, subd. (d).) The UTSA permits a trial court to enjoin any actual or threatened misappropriation of trade secrets. (§ 3426.2, subd. (a).)
Courts in other jurisdictions have adopted the "inevitable disclosure" rule which permits a former employer to enjoin an employee from working for a direct competitor where the "new employment will inevitably lead [the employee] to rely on the [former employer's] trade secrets." (PepsiCo Inc. v. Redmond (7th Cir.1995) 54 F.3d 1262, 1269.) In other words, an injunction against the new employment may issue where the new employment is "likely to result" in the disclosure of a former employer's trade secrets, or where it would be "impossible" for an employee to perform his or her new job without using or disclosing those secrets. (Air Products and Chemicals, Inc. v. Johnson (1982) 296 Pa.Super. 405, 416, 425, 442 A.2d 1114; see also Continental Group Inc. v. Kinsley (D.Conn.1976) 422 F.Supp. 838, 845 [injunction available "if the second employer's work is sufficiently similar to the that of the first employer to make likely the risk of disclosure by the employee in the course of his subsequent employment."].)
Although no California court has yet adopted it, the inevitable disclosure rule is rooted in common sense and calls for a fact specific inquiry. We adopt the rule here. In ruling on a request for a preliminary injunction, the trial court decides whether the disclosure of trade secrets is "likely to result" or "impossible" not to result from the subsequent employment. However, to prevail on appeal from the denial of a preliminary injunction, EOI must demonstrate as a matter of law that the trial court could only have found that White would inevitably make a disclosure, i.e., that it is "likely to result" or "impossible" not to result from White's employment at SBIR. EOI has not done so.
At the hearing on the motion for preliminary injunction, EOI argued that the "... inevitable disclosure doctrine says there is a threat." The trial court ruled that the factual showing in support of that argument was inadequate.
The trial court did not abuse its discretion when it factually found that *685 White would not inevitably disclose EOI trade secrets to SBIR. White lacks the training to pass on technical information, and SBIR stated it had no desire or need for that information. EOI presented no contrary evidence. The trial court was well within the bounds of reason when it factually found that White had not threatened to misappropriate and would not misappropriate EOI's technical trade secrets.
Similarly, the trial court factually found that White did not threaten to misappropriate EOI's claimed "non-technical" trade secrets. Much of the information EOI refers to as "nontechnical trade secrets" appears not to qualify as a trade secret. Other information, while confidential, appears to lack economic value to SBIR. In other instances, EOI failed to demonstrate that the disclosure of this information would cause it irreparable harm sufficient to justify injunctive relief that would necessarily end White's employment.
EOI contends its customer list is a trade secret that White will inevitably use in finding new customers for SBIR. We disagree. A customer list may be considered a trade secret where the identity of customers itself has economic value. For example, where many firms are potential customers for a product but only a few actually purchase it, their identities have economic value to all suppliers of the product because compiling a list of actual customers requires an investment of time and money. The UTSA protects that investment. (Morlife Inc. v. Perry (1997) 56 Cal.App.4th 1514, 1521-1522, 66 Cal. Rptr.2d 731; Courtesy Temporary Service, Inc. v. Camacho (1990) 222 Cal.App.3d 1278, 1286-1287, 272 Cal.Rptr. 352; American Credit Indemnity Co. v. Sacks (1989) 213 Cal.App.3d 622, 630-631, 262 Cal.Rptr. 92.) By contrast, a customer list does not achieve trade secret status where the identity of actual customers is common knowledge in the market at issue. (ABBA Rubber Co. v. Seaquist (1991) 235 Cal.App.3d 1, 18-19, 286 Cal.Rptr. 518; American Paper & Packaging Products, Inc. v. Kirgan (1986) 183 Cal.App.3d 1318, 1326, 228 Cal. Rptr. 713.)
Here, the market for EOI and SBIR's products is small and it is not difficult or expensive to learn the identity of actual customers. Suppliers know which customers buy from which suppliers. They routinely solicit all available customers, and larger customers purchase from more than one supplier. Under these circumstances, EOI's customer list is not a trade secret. (American Paper & Packaging Products, Inc. v. Kirgan, supra, 183 Cal.App.3d at p. 1326, 228 Cal.Rptr. 713 [customer list not a trade secret where customers are widely known and "often deal with more than one [supplier] at a time."].)
Nor can we agree that information regarding the requirements, preferences and specifications of EOI's customers constitutes a trade secret of EOI. The information can, of course, be disclosed by the customer to any EOI competitor. If it is a trade secret, it belongs to the customer, not EOI. (Metro Traffic Control Inc. v. Shadow Traffic Network, supra, 22 Cal. App.4th at p. 863, 27 Cal.Rptr.2d 573.)
EOI presented no evidence that its sales prices constitute a trade secret. The evidence was, instead, that suppliers can obtain sales prices by calling their competitors. Moreover, there was no evidence that EOI and SBIR products compete on price. To the contrary, EOI claimed that sales are driven by technology. SBIR agreed, presenting evidence that its prices are higher than EOI's.
EOI's claim that an injunction is needed to protect information about its production costs is also unpersuasive. Although its cost information appears to be confidential, EOI failed to show that the information has independent economic value to SBIR. (See, e.g., Union Carbide Corp. v. UGI Corp. (5th Cir.1984) 731 F.2d 1186, 1191 [production cost determining lowest price at which supplier could sell product a trade secret].) Because the two firms do not appear to compete based on price, the trial court reasonably concluded that the threat White would disclose cost information to *686 SBIR was insufficient to merit injunctive relief.
EOI also contends that White has confidential information about its marketing plans and sales strategies upon which he will inevitably rely in marketing and selling SBIR products. EOI's president, Bruce Malcom, stated that EOI has used several strategies to sell its products, including offering them through producers of compatible, noncompetitive products, participating in industry seminars, and "private labeling" components made by other producers. White learned about these strategies while working at EOI, and drafted a marketing plan for SBIR that incorporated some of the same strategies.
The trial court did not abuse its discretion when it concluded that the marketing plans at issue are not trade secrets. These strategies are matters of common knowledge, not the confidential proprietary ideas of EOI. (PepsiCo Inc. v. Redmond, supra, 54 F.3d at p. 1270 [employee enjoined from working for direct competitor where he had access to former employer's detailed plan for pricing, promoting and distributing soft drinks]; Self Directed Placement Corp. v. Control Data Corp. (9th Cir.1990) 908 F.2d 462, 465 [elements f job training course not a trade secret where each item is a matter of common knowledge or completely disclosed to any student taking the course].) Because the strategies are not trade secrets, the fact that SBIR might emulate them does not provide a basis for injunctive relief.

Interim Harm
EOI sought an injunction that would have put White out of a job. The trade secret law "... should not prevent workers from pursuing their livelihoods when they leave their current positions. (Citations.)" (PepsiCo Inc. v. Redmond, supra, 54 F.3d at p. 1268.) EOI had the burden to show it would be more harmed by the disclosure of its claimed trade secrets than White would be by unemployment. (IT Corp. v. County of Imperial, supra, 35 Cal.3d at pp. 69-70, 196 Cal. Rptr. 715, 672 P.2d 121.) The trial court did not abuse its discretion in finding against EOI on this issue because EOI presented no evidence of the extent to which it would be harmed by the threatened disclosure.
For example, even if information about EOI's production costs and sales prices is a trade secret, EOI presented no evidence of the extent of the harm it would suffer from disclosure. SBIR contends it does not compete with EOI on price and that only about one-third of its sales are for products that compete with EOI. EOI presented no contrary evidence of the frequency with which the two firms bid against each other for the same contract or the frequency with which such contracts are awarded based on price. Nor do we have any evidence of the impact lost test equipment sales would have on EOI's bottom line.
This scant evidence of harm to EOI must be balanced against the certainty that White would suffer at least some period of unemployment if enjoined from working for SBIR. We are required to protect both EOI's property rights and White's right to change employers in pursuit of his chosen career. (Metro Traffic Control, Inc. v. Shadow Traffic Network, supra, 22 Cal.App.4th at p. 859, 27 Cal. Rptr.2d 573; Rigging Internal Maintenance Co. v. Gwin (1982) 128 Cal.App.3d 594, 606-607, 180 Cal.Rptr. 451.) Because EOI presented little evidence of harm, the trial court did not abuse its discretion when it balanced the hardships to favor White.

Conclusion
The order denying EOI's application for preliminary injunction is affirmed. Costs to White.
GILBERT, P.J., and COFFEE, J., concur.
NOTES
[*] The Supreme Court ordered that the opinion be not officially published. (See California Rules of Court  Rules 976 and 977.)
[1] All statutory references are to the Civil Code.