Filed 4/12/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CLARITY CO. CONSULTING, LLC,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>LARRY GABRIEL,<br><br>   Defendant and Appellant. | 2d Civil No. B311823<br>(Super. Ct. No. 56-2020-00547889-CU-BC-VTA)<br>(Ventura County) |

      This appeal illustrates an attorney's misuse of the anti-SLAPP statute. (Code of Civ. Proc. § 425.16.)[1] "[H]owever efficacious the anti-SLAPP procedure may be in the right case, it can be badly abused in the wrong one, resulting in substantial cost—and prejudicial delay." (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 981.) This is the wrong case. Appellant was given more than adequate notice in the trial court that his anti-SLAPP motion was not designed for this contractual dispute. He has been given the same notice on appeal. The warnings should have given him pause. They did not.

---

      [1] All statutory references are to the Code of Civil Procedure.

What we said over twenty years ago is as true today as it was then: "[w]e . . . observe that trial attorneys who prosecute their own appeals, such as appellant [and his law firm], may have 'tunnel vision.' Having tried the case themselves, they become convinced of the merits of their cause. They may lose objectivity and would be well served by consulting and taking the advice of disinterested members of the bar, schooled in appellate practice." (*Estate of Gilkison* (1998) 65 Cal.App.4th 1446, 1449-1450.)

Respondent Clarity Co. Consulting, LLC, and ONclick Healthcare, Inc. (ONclick), entered into a written contract whereby respondent agreed to provide services to ONclick on an hourly basis. ONclick "is a start-up health care company that was formed in 2019." Appellant Larry Gabriel, a licensed California attorney, is the General Counsel of ONclick.

ONclick did not pay for the services rendered. So respondent filed a complaint alleging an ordinary breach of contract action and related causes of action against ONclick, appellant, and other persons associated with ONclick. Acting in his individual capacity, appellant filed a special motion to strike the complaint as a strategic lawsuit against public participation (SLAPP). The other defendants did not join in the motion. The motion was denied. This appeal is from the trial court's orders denying the motion and awarding respondent its attorney fees as a sanction for making a frivolous anti-SLAPP motion. (§ 425.16, subd. (c)(1).)

Appellant contends that the trial court erroneously determined that he had failed to satisfy the first step of the anti-SLAPP statute, i.e., he had not made a prima facie showing that respondent's causes of action were based on protected activity. He also claims that the trial court abused its discretion in

2

awarding attorney fees incurred by respondent in opposing the anti-SLAPP motion.[2]

We affirm. We grant respondent's motion for sanctions for taking a frivolous appeal. We order appellant and his counsel to pay sanctions of $12,798.50 to respondent and $8,500 to the clerk of this court.

*Respondent's Complaint*

The complaint alleged: "Defendants breached the contract [the contract between respondent and ONclick] . . . by failing and refusing to pay for the services contemplated by Defendants and completed by [respondent]. Multiple demands for payment have been made. To date, no payment in any amount has been provided." Respondent claimed that it had "sustained damages in the minimum amount of $63,500.00." The prayer for relief requested both compensatory and punitive damages.

The complaint consisted of the following six causes of action, each of which was against all defendants: (1) breach of a written contract, (2) breach of an oral agreement, (3) unjust enrichment, (4) breach of a covenant of good faith and fair dealing, (5) intentional misrepresentation, and (6) concealment.

In his opening brief, appellant claims that his motion to strike was directed at only the fifth cause of action for intentional misrepresentation and the sixth cause of action for concealment. "[T]he [m]otion was not addressed to the breach of contract action." But appellant's motion to strike expressly recited that it

---

[2] "An attorney fee award in connection with the denial of a special motion to strike is sufficiently interrelated with the denial that the fee award is reviewable on appeal from the order denying the special motion to strike." (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 680, fn. 2.)

3

was directed at respondent's "complaint in its entirety." Since appellant's briefs discuss only the fifth and sixth causes of action, we limit our analysis to these causes of action.

The fifth cause of action alleged that respondent had detrimentally relied on defendants' misrepresentations concerning ONclick's financial health and "Defendants' ability to pay for services . . . provided by [respondent] pursuant to the Contracts." Defendants intentionally misrepresented that they "were not in financial jeopardy and that ONclick . . . was financially sound and had secured significant investor financing to operate its business." Respondent was "deceived into believing that compliance with the terms of the Contracts would and could occur." "In furtherance of the fraudulent misconduct and in an attempt to secure the services of [respondent] . . . , Defendants engaged in overt attempts to hire Jennifer McCoy, the President and Chief Executive Officer of [respondent], as full-time Chief Operating Office[r] of ONclick Healthcare, Inc. . . . [T]he . . . [proposed] employment contract [was] valued in excess of $1,000,000 annually. All of these negotiations . . . occurred while Defendants all knew, but failed to represent . . . that Defendants had no ability to finance such a contract since there were no funds with which to do so. . . . [I]n reliance on the good faith and fair dealings which [respondent] assumed were occurring, [it] continued to perform work on behalf of Defendants despite never having been paid to date." Respondent "declined other opportunities from existing and potential clients which resulted in a loss of income . . . ."

The sixth cause of action alleged: "Defendants concealed from [respondent] certain information regarding the financial soundness and ability to pay for services which Defendants

4

sought [respondent] to perform." The concealment was "a ruse designed to secure the services of [respondent] under false pretenses because Defendants could not operate without the work product created by and the services performed by [respondent]." Had respondent been aware that ONclick was in financial jeopardy, it "would not have engaged in the Contracts and/or would have taken additional safeguards to ensure payment for services contemplated and performed, such as advance payment for services."

*Appellant's Motion to Strike*

Appellant alleged that at all times he had acted "solely in his role as the general counsel of ONclick." "[H]e was not involved in the negotiations of the [service] contract with [respondent], is not a party to [that] contract and only became involved in negotiations with [respondent] as counsel for ONclick in an attempt to work out a long-term employment relationship between ONclick and [respondent's] CEO [Jennifer McCoy] . . . by and through [respondent's] attorney, Stephen Fishback." "When the negotiations broke down, and Mr. Fishback was unhappy that ONclick refused to immediately pay [respondent] on its alleged invoices, Mr. Fishback threatened to sue [appellant] personally, without any factual basis for the claim whatsoever." "Mr Fishback . . . also threatened to file a complaint with the State Bar against [appellant]." "The parties then engaged in settlement negotiations. Those negotiations failed. . . . In engaging in the [employment] contract negotiations and the

5

settlement discussion, [appellant] was exercising his constitutionally protected rights."[3]

*Trial Court's Ruling*

In a minute order the trial court ruled: "The motion is denied. This is a breach of contract action based on the agreement [between respondent and ONclick]. [Appellant] is clearly annoyed at being sued, but his remedy is a demurrer and/or a motion for summary judgment. . . . Based on what was pleaded, this [SLAPP motion] should not have been filed. There may have been actionable words exchanged between counsel, but none of that has been pleaded. What is at issue is what is in the complaint, and that is nothing more than a breach of contract along with some related causes of action. Sanctions in the amount of $3,300 are awarded in favor of [respondent] . . . ."

*The Anti-SLAPP Statute*

"A SLAPP suit . . . seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16— known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)

"A court evaluates an anti-SLAPP motion in two steps. . . . [¶] . . . The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute." (*Wilson v. Cable News*

---

[3] As we explain below, these allegations are at variance with the complaint. They have nothing to do with the fifth and sixth causes of action.

6

*Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) "A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct [citation]. The four categories in subdivision (e) describe conduct "'in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'" (§ 425.16, subd. (e).)" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619-620.) "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected . . . ." (*Wilson*, *supra*, at p. 888.)

"'If the defendant carries its [first-step] burden, the plaintiff must then demonstrate its claims have at least "minimal merit."' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim. . . . [¶] Because the [trial court] determined [appellant] had failed to carry its initial burden, we are here concerned only with the first step of the analysis." (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

*Standard of Review*

"A ruling on a section 425.16 motion is reviewed de novo. [Citation.] We review the record independently to determine whether the asserted cause[s] of action arise[] from activity protected under the statute . . . ." (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 675.) "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." . . .'" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)

7

Appellant argues: Respondent's fifth cause of action for intentional misrepresentation and sixth cause of action for concealment "addressed [his] freedom of speech in representing his client, ONclick, regarding a potential contract with [respondent's] owner [Jennifer McCoy], and thereafter in engaging in settlement discussions. As such, these allegations invaded [his] ability to advise his client and attacked his efforts at settlement, which are all protected speech." "The Motion [to strike] . . . addressed 'speech' in the context of negotiations regarding a[n] [employment] contract, and then a settlement, all under the threat of litigation by [respondent's] counsel [Stephen Fishback]." "Given the factual scenario, . . . [appellant] has satisfied the first [step] required for an Anti-SLAPP motion, to wit: the activity is a protected activity under the anti-SLAPP statute." "It is unassailable that '[s]ettlement discussions made in connection with or in anticipation of litigation are protected activities under the anti-SLAPP statute. . . .'" Although such settlement discussions constitute protected activity, the fifth and sixth causes of action have nothing to do with settlement discussions. Nor do they arise out of protected free speech.

<u>Protected Activity – Free Speech</u>

Section 425.16, subdivision (b) provides, "(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of . . . free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ." Section 425.16, subdivision (e) provides, "'[A]ct in furtherance of a person's right of . . . free speech . . . in connection

with a public issue' includes: . . . (3) any written or oral statement . . . made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." "[B]oth the third and fourth categories of conduct that fall within section 425.16[, subdivision (e)] are subject to the limitation that the conduct must be in connection with an issue of public interest. The Legislature intended this requirement to have a limiting effect on the types of conduct that come within the third and fourth categories of the statute." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*).)

Section 425.16 "does not provide a definition for 'an issue of public interest,' and it is doubtful an all-encompassing definition could be provided. However, the statute requires that there be some attributes of the issue which make it one of public, rather than merely private, interest." (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1132.) Appellant's negotiations and settlement discussions with respondent were "simply part of a private transaction, unconnected to any 'public issue' or 'issue of public interest.' (§ 425.16, subd. (e), clauses (3), (4).) Therefore, . . . clauses (3) and (4) of section 425.16, subdivision (e) . . . are unavailing to [him]." (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 200 (*Moore*); see also *Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1048 (*Workman*) ["To be considered an issue of public interest, the communication must 'go beyond the parochial particulars of the given parties'"].)

9

<u>Protected Activity – Litigation-Related Activity</u>

Litigation-related activity may be protected under the first two clauses of section 425.16, subdivision (e). The clauses apply to "(1) any written or oral statement or writing made before a . . . judicial proceeding, or . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e), clauses (1) & (2).) Unlike the third and fourth clauses of section 425.16, subdivision (e), the first two clauses "do not have an 'issue of public interest' limitation. . . . " (*Moore*, *supra*, 116 Cal.App.4th at p. 196.)

"Numerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity. [Citations.] Put otherwise, legal advice and settlement made in connection with litigation are within section 425.16, and may protect defendant attorneys from suits brought by third parties on any legal theory or cause of action 'arising from' those protected activities." (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 154.) "The protection of the anti-SLAPP statute applies 'even against allegations of fraudulent promises made during the settlement process.' [Citation.]" (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 114.)

As alleged in the fifth cause of action, the injury-producing conduct was appellant's intentional misrepresentations that (1) ONclick was financially healthy, (2) it would be able to pay for respondent's services, and (3) it had the means to finance an employment contract with respondent's CEO that was "valued in excess of $1,000,000 annually." As alleged in the sixth cause of action, the injury-producing conduct was appellant's concealment

10

of ONclick's poor financial condition and inability to pay for respondent's services or to finance the proposed employment contract. The purpose of the misrepresentations and concealment was to induce respondent to enter into the service agreement with ONclick and provide its services on credit instead of requiring payment in advance.

The injury-producing conduct, which both causes of action characterize as "fraudulent misconduct," does not qualify as litigation-related protected activity. Appellant's misrepresentations and acts of concealment were not made in contemplation or anticipation of future litigation. When they were made, there was no claim or dispute to be litigated or settled.

Appellant's litigation-related activity did not commence until the employment-contract negotiations "broke down" and ONclick refused respondent's request that it immediately pay respondent's invoices. As appellant stated in his points and authorities filed in the trial court, "The parties then engaged in settlement negotiations" that "failed."

Respondent aptly observes: "[Appellant] ignor[es] . . . that all the allegations of [the fifth and sixth causes of action] arise solely out of the defendants' failure to pay the amount [they] owed [respondent] for the services provided and the defendants' misrepresentation and/or concealment of material information during the negotiation of the services contracts and/or the . . . employment contract. . . . [T]hose negotiations in no way involved any attempt at *settlement* of anything . . . ."

Accordingly, appellant failed to carry his first-step burden of establishing "a prima facie case that activity underlying [respondent's] claims [in the fifth and sixth causes of action] is

11

statutorily protected . . . ." (*Wilson, supra*, 7 Cal.5th at p. 888.)
The fifth and sixth causes of action focus on appellant's
unprotected activity before the commencement of protected
settlement discussions on respondent's breach of contract claim.

*Sanctions for Making Frivolous Motion to Strike*

"If the court finds that a special motion to strike is frivolous
or is solely intended to cause unnecessary delay, the court shall
award costs and reasonable attorney's fees to a plaintiff
prevailing on the motion, pursuant to Section 128.5." (§ 425.16,
subd. (c)(1).)  The trial court ruled that appellant's motion to
strike was frivolous.  "Frivolous in this context means that any
reasonable attorney would agree the motion was totally devoid of
merit.  [Citation.]  An order awarding attorneys' fees pursuant to
section 128.5, as incorporated in section 425.16, subdivision (c), is
reviewed under the abuse of discretion test.  [Citation.]  A ruling
amounts to an abuse of discretion when it exceeds the bounds of
reason, and the burden is on the party complaining to establish
that discretion was abused." (*Gerbosi v. Gaims, Weil, West &
Epstein, LLP* (2011) 193 Cal.App.4th 435, 450 (*Gerbosi*); see also
*Estate of Gilkison, supra,* 65 Cal.App.4th 1443, 1448-1449
[collecting cases and describing the standard of review].)

Any reasonable attorney would agree that appellant's
special motion to strike was "totally and completely without
merit." (§ 128.5, subd. (b)(2).)  Appellant has not made, and could
not make, a prima facie showing that his acts underlying the fifth
and sixth causes of action were in furtherance of his
constitutional right of free speech in connection with a public
issue or an issue of public interest.  Appellant's acts related to
matters that were of purely private concern.  Appellant should

12

have considered the component words of the SLAPP acronym – "strategic lawsuit against *public* participation."  (Italics added.)

Nor could appellant make a prima facie showing that his allegedly wrongful, injury-producing conduct constituted litigation-related protected activity.  Any reasonable attorney would know that "'it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies . . . .'" (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 575.)  In addition, any reasonable attorney would realize that the principal thrust or gravamen of the fifth and sixth causes of action was defendants' allegedly fraudulent misconduct during the negotiations of the service and employment contracts.  These negotiations preceded the litigation-related settlement discussions that occurred after respondent's attorney had demanded immediate payment of respondent's overdue invoices.

"In 2003, concerned about the 'disturbing abuse' of the anti-SLAPP statute, the Legislature enacted section 425.17 to exempt certain actions from it.  (§ 425.17, subd. (a).)" (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21-22.)  Respondent's fifth and sixth causes of action are not exempt under section 425.17.  But appellant's special motion to strike these causes of action is an example of the "disturbing abuse" of the anti-SLAPP statute.  "Whatever defenses [appellant] may have, those defenses could not be established by way of an anti-SLAPP motion." (*Gerbosi, supra,* 193 Cal.App.4th at p. 450.)

*Sanctions for Taking Frivolous Appeal*

After the filing of appellant's reply brief, respondent timely filed a motion to impose sanctions against appellant pursuant to section 907, which provides, "When it appears to the reviewing

13

court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." "'Courts have struggled to apply . . . section 907. [Citation.] On the one hand, the statute should be used to compensate for a party's egregious behavior, and to deter abuse of the court system and the appellate process. [Citations.] On the other hand, sanctions should not be awarded simply because an appeal is without merit. Indiscriminate application of section 907 could deter attorneys from vigorously representing their clients, and deter parties from pursuing legitimate appeals.'" (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 834.)

Sanctions for taking a frivolous appeal "should be used most sparingly to deter only the most egregious conduct." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 651 (*Flaherty*).) "Further, '[a]n appeal, though unsuccessful, should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law. [Citation.]'" (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422 (*Dodge*).)

The taking of the present appeal falls within "the most egregious conduct" referred to in *Flaherty*, *supra*, 31 Cal.3d at p. 651. The appeal does not involve a unique issue. It involves a "garden-variety" issue under the anti-SLAPP law. Appellant does not make "'a reasoned argument for the extension, modification, or reversal of existing law. . . .'" (*Dodge*, *supra*, 105 Cal.App.4th at p. 1422.) The facts "'are . . . amenable to easy analysis in terms of existing law . . . .'" (*Ibid.*) Appellant needed only to determine "'[t]he allegedly wrongful and injury-producing

conduct . . . that provides the foundation for the claim[s]'" in the fifth and sixth causes of action. (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) These causes of action are not complex. They are simple and straightforward. Any reasonable attorney would have understood that the allegedly injury-producing conduct involved a matter of private concern and was not in furtherance of appellant's constitutional right of free speech in connection with a public issue or an issue of public interest. Any reasonable attorney would also have understood that the allegedly injury-producing conduct was defendants' fraudulent, unprotected misrepresentations (fifth cause of action) and concealment (sixth cause of action) that preceded litigation-related settlement discussions over respondents' unpaid invoices.

"This case is simply '[a]nother appeal in an anti-SLAPP case. Another appeal by a defendant whose anti-SLAPP motion failed below. Another appeal [with] no merit, [which] will result in an inordinate delay of the plaintiff's case and cause [it] to incur more unnecessary attorney fees.' [Citation.] Thus, we find an award of sanctions to be appropriate, and grant [respondent's] motion." (*Workman, supra,* 33 Cal.App.5th at p. 1064.)

Respondent has submitted declarations showing that its reasonable appellate attorney fees and costs total $12,798.50. This amount is a reasonable and appropriate sanction.

"'Courts, with increasing frequency, have imposed additional sanctions, payable to the clerk of the court, to compensate the state for the cost to the taxpayers of processing a frivolous appeal. [Citation.] The cost of processing an appeal that results in an opinion has been estimated to be approximately $ 8,500.' [Citations.] We find that additional sanctions in the

15

amount of $ 8,500.00 are appropriate." (*Workman, supra*, 33 Cal.App.5th at pp. 1064-1065, fn. omitted.)

"'Sanctions may be ordered against a litigant [citation] and/or against the lawyer. . . .' [Citation.] Sanctions are warranted against a lawyer 'who, because the appeal was so totally lacking in merit, had a professional obligation not to pursue it.' [Citation.] We find that sanctions are appropriate against both [appellant] and [his] counsel of record: [Daniel J. Mulligan of Jenkins Mulligan & Gabriel LLP]. We therefore sanction appellant and [his] attorneys, jointly and severally, in the amount of $12,798.50, payable to [respondent], and in the amount of $ 8,500.00, payable to the clerk of this court. [¶] This opinion constitutes a written statement of our reasons for imposing sanctions. [Citations.]" (*Workman, supra*, 33 Cal.App.5th at p. 1065.)

*Disposition*

The trial court's orders denying appellant's special motion to strike and imposing sanctions of $3,300 for making a frivolous motion are affirmed. For taking a frivolous appeal, sanctions are imposed upon appellant Larry Gabriel as well as his counsel of record, Daniel J. Mulligan and Jenkins Mulligan & Gabriel LLP, jointly and severally, in the amount of $12,798.50 to be paid to respondent, and $8,500.00 to be paid to the clerk of this court. Upon issuance of the remittitur, the clerk of this court is ordered to forward a copy of this opinion to the State Bar. (Bus. & Prof. Code, §§ 6086.7, subd. (a)(3), 6068, subd. (o)(3).) All sanctions shall be paid no later than 30 days after the date the remittitur is issued. Respondent shall recover from appellant any additional costs on appeal to which it is entitled pursuant to rule 8.278(d) of the California Rules of Court.

CERTIFIED FOR PUBLICATION.


                                                    YEGAN, J.

We concur:


        GILBERT, P. J.


        PERREN, J.

17

Henry Walsh, Judge

Superior Court County of Ventura

_____

Jenkins Mulligan & Gabriel and Daniel J. Mulligan, for Defendant and Appellant.

Keller, Fishback & Jackson and Stephen M. Fishback, Dan C. Bolton; The Arkin Law Firm and Sharon J. Arkin, for Plaintiff and Respondent.