Filed 4/20/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO C. TORRES,<br><br>   Defendant and Appellant. | 2d Crim. No. B292551<br>(Super. Ct. No. VA144478)<br>(Los Angeles County) |

Where, as here, the trial court factually finds that a self-represented defendant has engaged in an attempt to intimidate a witness, the constitutional right of self-representation can, in the exercise of the trial court's sound discretion, be revoked.

Appellant was convicted by jury, of two counts of battery on an ex-girlfriend (Pen. Code, § 273.5)[1] with weapon use (§ 12022, subd. (b)(1)) and great bodily injury (§ 12022.7, subd. (e)) enhancements, assault with a deadly weapon (§ 245, subd.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

(a)(1)), possession of metal knuckles (§ 21810), possession of a billy or blackjack (§ 22210), and kidnapping (§ 207, subd. (a)). The trial court sentenced appellant to nine years eight months state prison.  We affirm.

*Facts*

In April 2017, appellant tried to reconcile with his ex-girlfriend, J.M., calling her more than 20 times.  J.M. agreed to meet with appellant on a street corner in Huntington Park.  Appellant was angry that J.M. was dating, punched her in the face, choked her, cracked a beer bottle over her head, and took her cell phone.  A bystander saw appellant hit J.M. on the head and knock her to the ground.  Appellant pulled J.M. up and led her to an alley where he pushed J.M against a wall and hit her in the chest.  Appellant then forced J.M. to walk down the street, hitting her as they walked.

The bystander called 911 and followed in his car.  When the police arrived, appellant dropped a pair of brass knuckles and a small baseball bat to the ground.  J.M. had injuries to her head, face, mouth, and neck.  Appellant was arrested.

Two days later, appellant called his mother from jail.  She chastised him for beating the victim.  Appellant's taped phone conversation with his mother was played to the jury.  Mother said:  "[S]he [the victim] should fucking put charges on your ass.  I swear to God."  Appellant admitted beating the victim and that witnesses saw the assault, and said:  "I know I'm fucking up really bad, and I never even kn[e]w that, like, I was capable of doing this."  Mother replied, "[W]hat is wrong with you? . . . Fucking beating her in the fucking street.  What is wrong with you?"  Appellant answered, "I know.  It's terrible.  [¶]

2

[¶] [¶] . . . But I want you to tell [the victim] that I am sorry. I am very sorry."

After the preliminary hearing appellant requested and was granted leave to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). The superior court also issued a protective order precluding any contact with the victim. In a comprehensive four page "advisement and waiver of rights to counsel," appellant was expressly advised of the *Faretta* rules and how his pro per status could be revoked. (Super. Ct. L.A. County, Local Rules, rule 8.42, (a), (g).) The written waiver of the right to counsel and election to represent himself recited that this pro per status could be revoked if he attempted to "obstruct the conduct and progress of the trial." One month later, appellant attempted to intimidate the victim with the goal of having her not cooperate with the prosecutor. This was in violation of (1) the *Faretta* oral and written agreements; (2) the Los Angeles Superior Court rules; (3) the Protective order, and (4) Penal Code sections 664, 136.1.

*Revocation of Appellant's Pro Per Status*

Appellant contends that the trial court abused its discretion in revoking his pro per status after appellant asked his sister to contact the victim and have her say that she was coerced by the police detective to "press charges." The prosecutor advised the trial court that appellant called his sister from jail "asking her to speak to the victim, locate the victim and have her write a statement indicating that she was coerced in[to] making the statements." The trial court factually found that appellant violated a criminal protective order, attempted to dissuade the victim from testifying, and tried to have a third person contact the victim. It revoked appellant's pro per status and reappointed

3

the public defender to represent appellant.  This was 11 months before trial.

*People v. Carson General Guidelines*

As indicated by the California Supreme Court:  "One form of serious and obstructionist misconduct is witness intimidation, which by its very nature compromises the factfinding process and constitutes a quintessential 'subversion of the core concept of a trial.'  [Citation.]  'A defendant acting as his own attorney has no greater privileges than any member of the bar.  He may not disrupt proceedings or intimidate witnesses.  [Citations.] . . . The trial court can stop harassment and abuse of a witness by a threatening defendant and can terminate self-representation by a defendant who engages in serious misconduct.  [Citations.]'  [Citation.]  Threatening or intimidating acts are not limited to the courtroom.  [Citation.]  When a defendant exploits or manipulates his in propria persona status to engage in such acts, wherever they may occur, the trial court does not abuse its discretion in determining he has forfeited the right of continued self-representation."  (*People v. Carson* (2005) 35 Cal.4th 1, 9 (*Carson*); see also *People v. Becerra* (2016) 63 Cal.4th 511 (*Becerra*).)

*Abuse of Discretion on Appeal*

We review the trial court's ruling for abuse of discretion.  (*Carson, supra*, 35 Cal.4th at p. 12.)  ""The term [judicial discretion] implies the absence of arbitrary determination, capricious disposition or whimsical thinking.  It imports the exercise of discriminating judgment within the bounds of reason.  [Par.]  To exercise the power of judicial discretion all the material facts in evidence must be known and considered, together also with the legal principles essential to an

4

informed, intelligent and just decision." [Fn. omitted.]' [Citations.]. 'The appropriate [appellate] test for abuse of discretion is whether the trial court exceeded the bounds of reason.' [Citations.] [¶] A '. . . showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice . . . .' [Citation.] "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." [Citations.]' [Citation.]" (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449.)

*No Abuse of Discretion as a Matter of Law*

As indicated, it is well established that the trial court may terminate a defendant's *Faretta* status where the defendant engages in serious and obstructionist misconduct or conduct that threatens the core integrity of the trial. (*Faretta, supra,* 422 U.S. at p. 834, fn. 46; *Carson, supra,* at p. 6.) Witness intimidation in a domestic violence case is just that. (*Id.* at p. 9.) Such conduct is more than an attempt to "obstruct the conduct and progress of the trial." (Ante, p. 3.) It is an attempt to stop the trial.

While representing himself, appellant's actions, including the telephone attempt to intimidate a witness, are

5

attributed to him in his self-represented status. He brazenly violated a criminal protective order and asked his sister to dissuade the victim from testifying. He had been warned and knew that such conduct could result in the loss of his pro per status and pro per privileges. Appellant complains that the trial court did not consider less drastic sanctions. The record is silent on this claim. Error may not be predicted on a silent record. (See ante, p. 4.) And, we presume that the trial court did consider "less drastic sanctions." (See ante, pp. 4-5.) Appellant also claims that there is no express finding that appellant's misconduct "'impaired the integrity of the trial.'" This finding is easily implied. Appellant is fortunate not to have been charged with an additional offense.

It does not matter whether the telephone used in the "witness intimidation" attempt was dedicated to pro per use in the jail library or whether it is some other telephone that can be used by a jail inmate. The *Carson* "guidelines" do not require that a dedicated pro per telephone be used to support termination of pro per status. If this were the rule, a pro per could retain such status while attempting to intimidate a witness on a non-dedicated telephone. It does not matter whether the witness intimidation is in person, on the telephone, by text message, email, by legal or ordinary mail, or by carrier pigeon. Attempted witness intimidation may show that the pro per defendant has no intention of following other trial court rules. A pro per defendant must be "able and willing to abide by rules of procedure . . . ." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173.) As long as the conduct is reasonably related to pro per status, witness intimidation may serve as the factual predicate for revocation. In addition to the numerous violations previously articulated (see

6

ante, p. 3) we must observe that appellant's attempt to alter evidence at trial strikes at the heart of the truth-seeking function of the superior court.

Appellant argues that it is "troubling" that the prosecutor asked the trial court to terminate his pro per status. The prosecutor, as an officer of the court, advised the trial court about what transpired. She asked that the trial court to consider the protective order, his phone privileges, and the use of the sister as a legal runner. The prosecutor did not advocate a particular result or overstep her role. (*Carson, supra,* 35 Cal.4th at p. 11, fn. 1.) An attorney has a duty to report misconduct to the trial court when it involves witness intimidation in a pending case. (Cal. Rules of Prof. Conduct, rule 3.3(b).)

Simply stated, a criminal defendant has no constitutional right to intimidate or dissuade a witness. Nothing in *Becerra, supra*, 63 Cal.4th 511 requires reversal. There, pro per status in a death penalty case was revoked because the trial court found that the defendant was "dilatory," "stalling." (*Id.* at p. 516.) This conduct had nothing to do with the truth-seeking process. And there, the trial court did not make an adequate record for intelligent appellant review. Here, by contrast, the trial court held two adversary hearings, allowed appellant to be heard, and made an express factual finding that appellant violated the salient rules and "attempted to dissuade a witness from testifying."

### *Dueñas — Present Ability to Pay Fines and Fees*

Appellant argues that the trial court erred in imposing a court operations assessment (§ 1465.8), a criminal conviction assessment (Gov. Code, § 70373), and a restitution fine (§ 1202.4, subd. (b)) without finding appellant had the present

7

financial ability to pay.[2]  (See *People v. Dueñas* (2019) 30 Cal.App.5th 1157.)  Unlike the defendant in *Dueñas*, appellant did not object to the fine and fees, or request a hearing on ability to pay, thus forfeiting the issue.  (See, e.g., *People v. Torres* (2019) 39 Cal.App.5th 849, 860; *People v. Avila* (2009) 46 Cal.4th 680, 729; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464.)

*Disposition*

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, J.


I concur:


GILBERT, P. J.

---

[2] On December 14, 2018, the trial court modified the sentence nunc pro tunc to reflect that $300 restitution and parole revocation fines were imposed (§§ 1202.4, subd. (b); 1202.45), plus a $240 court operations assessment (§ 1465.8), a $180 conviction assessment (Gov. Code, § 70373), and a $500 domestic violence fee (§ 1203.097).  Appellant did not appeal from the nunc pro tunc order or claim that the fines and fees were erroneously imposed.  Any theoretical "*Dueñas*" claim as to these fines and assessments is also forfeited.

TANGEMAN, J., Dissenting:

The right of self-representation is guaranteed by the Sixth Amendment. (*Faretta v. California* (1975) 422 U.S. 806, 819.) Accordingly, termination of that right "is a severe sanction and [it] must not be imposed lightly." (*People v. Carson* (2005) 35 Cal.4th 1, 7 (*Carson*).) Forfeiture should be found "only in those rare cases of extremely serious misconduct . . . where it is apparent that any lesser measures will be patently inadequate." (*King v. Superior Court* (2003) 107 Cal.App.4th 929, 944 (*King*) [analogous issue of forfeiture of right to counsel].) The "principle of applying the least burdensome measure that will provide the necessary security should be applied when a defendant's fundamental right to counsel is at stake." (*Id.* at p. 943.)

There has been no showing here that termination of Torres's constitutional right of self-representation was "the least burdensome measure" necessary to prevent compromising the trial. The trial court applied the most severe sanction available based on a phone call Torres made from jail, in which he asked his sister to contact the victim and have her state that the police coerced her into making statements against him. The court concluded that this sanction was proper because Torres attempted to dissuade the victim and violated his no-contact restraining order. On that basis, it terminated his Sixth Amendment right.

The record does not support the court's conclusion that Torres's conduct constituted dissuading (or attempting to dissuade) a witness or victim. Penal Code section 136.1, subdivision (a) precludes a person from attempting to, or preventing or dissuading a witness or victim from, "attending or giving testimony at any trial, proceeding, or inquiry authorized

1

by law."  The restraining order similarly provides, "You must not attempt to or actually prevent or dissuade any victim or witness from attending a hearing or testifying or making a report to any law enforcement agency or person."  On this record, no showing has been made that Torres attempted to dissuade the victim from attending a hearing, testifying, or giving a report.

The restraining order did, however, prohibit Torres from contacting the victim.  Although the record discloses that his effort was unsuccessful, he clearly attempted to violate the order.  The issue presented here is whether that attempt justified the revocation of his constitutional right to represent himself.  I conclude that on this record it does not, for two reasons.

First, *Carson*, *supra*, 35 Cal.4th 1, 6, holds that a court may revoke a defendant's right of self-representation based on out-of-court misconduct under certain circumstances, but those circumstances have not been established here.  The misconduct involved in *Carson* was that the defendant "had taken advantage of the fact" that an inexperienced investigator had given him an unredacted copy of discovery.  (*Id*. at pp. 12-13.)  Possible intimidation of a witness was only tangentially discussed.  The prosecutor in that case "argued that [the] defendant's improper acquisition of discovery, when considered in light of antecedent attempts to suborn perjury, fabricate an alibi, and possibly intimidate a prosecution witness, warranted termination of his *Faretta* rights."  (*Id*. at p. 13, fn. omitted.)  In response, *Carson* states, "One form of serious and obstructionist misconduct is witness intimidation, which by its very nature compromises the factfinding process and constitutes a quintessential 'subversion of the core concept of a trial.' [Citation.]"  (*Id*. at p. 9.)

2

But *Carson* concludes its discussion of witness intimidation by stating, "When a defendant *exploits or manipulates his in propria persona status* to engage in such acts, wherever they may occur, the trial court does not abuse its discretion in determining he has forfeited the right of continued self-representation." (*Carson*, *supra*, 35 Cal.4th at p. 9, italics added.)

The record below contains no showing or finding that Torres "exploit[ed] or manipulate[d] his propria persona status" when he asked his sister (who was not yet serving as his legal runner) to contact the victim about her statements to police. Any defendant with access to a telephone or other means of communication could do the same thing, whether represented by counsel or not. *Carson* cautions that some connection between a defendant's in propria persona status and the misconduct must be established, but that essential ingredient is missing here.

Second, even when a defendant has exploited their in propria persona status to engage in out-of-court witness intimidation, termination of the constitutional right of self-representation can be too severe a remedy. In *Carson*, for example, because the record was unclear on whether lesser sanctions would suffice based on the discovery the defendant actually accessed, our Supreme Court conditionally reversed the conviction and remanded the matter for a hearing on whether the termination of *Faretta* rights was the proper remedy. (*Carson*, *supra*, 35 Cal.4th at p. 13.)

In remanding, the *Carson* court listed factors that the trial court should consider before terminating a defendant's *Faretta* rights. (*Carson*, *supra*, 35 Cal.4th at p. 10.) One factor is the availability and suitability of alternative sanctions. (*Ibid.*)

3

When, as here, out-of-court misconduct forms the basis for terminating *Faretta* rights, "it is incumbent on the trial court to document its decision to terminate self-representation with some evidence reasonably supporting a finding that the defendant's obstructive behavior seriously threatens the core integrity of the trial." (*Id*. at p. 11.) "Such a record should answer several important questions," including "Were other sanctions available? If so, why were they inadequate?" (*Id*. at pp. 11-12.)

No such record exists here. Alternative sanctions were not considered on the record, and the court had already removed Torres's sister as his legal runner as a consequence of the phone call. There was no explanation why that was not an adequate remedy, or whether some other sanction short of termination of Torres's right of self-representation would suffice.

For these reasons, and on this record, no showing has been made that this is one of "those rare cases of extremely serious misconduct . . . where it is apparent that any lesser measures will be patently inadequate." (*King*, *supra*, 107 Cal.App.4th at p. 944.) I would therefore conditionally reverse the conviction and remand for a hearing on whether termination of Torres's right of self-representation was appropriate based on the factors set forth in *Carson*, *supra*, 35 Cal.4th 1.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

4

Lillian Vega Jacobs, Judge

Superior Court County of Los Angeles

_____

Lillian Hamrick, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Snr. Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Analee J. Brodie, William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.