Filed 9/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B336233 (Super. Ct. No. 2019028014) (Ventura County) |
| THE PEOPLE, Plaintiff and Respondent, v. J.S., Defendant and Appellant. | |

The Court of Appeal does not reweigh evidence on appeal. The Court of Appeal does not substitute its discretion for that of the trial court on appeal. In an amended, 18-count petition filed pursuant to Welfare and Institutions Code section 602, the People alleged that J.S. committed murder (Pen. Code, § 187), as well as 17 other serious felony offenses.[1] (See pp. 2-3, *post.*)

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

After a hearing, the juvenile court ordered appellant transferred to adult criminal court.  (§ 707, subd. (a).)  Appellant contends the order is not supported by substantial evidence, and the juvenile court abused its discretion by misapplying the statutory requirements.  These contentions are, in essence, an invitation to retry and reweigh the evidence and "second guess" the trial court's sound discretion.  We affirm.

*Factual Predicate*

In 2018 and 2019, appellant engaged in a series of crimes.  He was 16 years old when some of the offenses occurred and 17 when others occurred.  Appellant committed seven "street robberies" in which he and his cohorts approached random individuals and demanded their cell phones, jewelry, and cash.  In April and June 2019, he committed a burglary at an apartment leasing office and a house.  In June 2019, he attempted to rob Charles Barber.  When Barber resisted, appellant struck him several times and stabbed him in the head with a knife, killing him.  Two days after the murder, appellant drugged a 14-year-old girl in a motel, sexually assaulted her with another male, and filmed himself having sex with the girl while she was unconscious.

*Section 602 Petition*

In a fourth amended petition, the People charged appellant with violations of the Penal Code, including: murder (§ 187, subd. (a)(1), count 1), with the special allegation that he personally used a knife (§ 12022, subd. (b)(1)); second degree robbery (§ 211, counts 2-5), with special allegations that he personally inflicted great bodily injury (§ 12022.7) as to count 3, and personally used a knife (§ 12022, subd. (b)(1)) as to count 4; rape and other crimes against a single victim (§§ 261, subds. (a)(3), (a)(4), 289, subds.

2

(d), (e), 287, subds. (f), (i), 286, subds. (f), (i), counts 6-13); first degree residential burglary (§ 459, counts 14 and 18); and second degree robbery (§ 211, counts 15-17), with the special allegation that appellant personally used a knife (§ 12022, subd. (b)(1)) as to count 15.

The People filed a motion to transfer appellant to adult criminal court. The probation department filed a report in support of transfer. After extensive briefing, the juvenile court conducted the transfer hearing.

*Appellant's Family and Social History*

Appellant's mother was the victim of prolonged domestic abuse by appellant's father, including while she was pregnant with appellant. When appellant was five years old, his mother left his father. When appellant was 13 years old, his mother became pregnant by another man, who moved into the family home. Over the next several years, Child Protective Services investigated reports of physical abuse and neglect. The family experienced food insecurity and homelessness at one point.

When appellant was 15 years old, he began visiting his paternal family. His mother noticed he was more distant after the visits. Around the same time, appellant began experimenting with Xanax, alcohol, marijuana, and cocaine and developed an addiction to Xanax.

*Appellant's Conduct in Custody*

Appellant has been detained at the juvenile detention center since August 2019. Since that time, he has received two major incident reports for fighting and possession of contraband. He has also received 69 minor incident reports as of April 2021.

In September 2023, appellant was involved in a physical fight in the juvenile detention center. Probation Officer Clemente

3

Andrade intervened and separated appellant from the other individual.

Appellant participated in social and rehabilitation programming and graduated from high school with his diploma. He also participated in the Providence Scholars program, which allowed him to enroll in college courses. Additionally, appellant received mental health treatment and therapy.

*Expert Testimony*

Dr. Blake Carmichael, a clinical psychologist retained by the People, opined that it would be "very difficult" for appellant to be rehabilitated prior to the expiration of the juvenile court's jurisdiction. He identified several "risk factors" to appellant's rehabilitation. These included appellant's drug use while in custody, likely risk for violent recidivism, gang involvement, and his consistent pattern of rule violations during his detention. Dr. Carmichael also testified that he did not see any evidence that appellant's crimes were triggered by prior trauma. He opined it was "possible" but not "probable" that appellant could be rehabilitated prior to age 25.

Probation Officer Vredenburgh, testified about the rehabilitative programming available to juveniles through the SYTF, including: Moral Reconation Therapy, Dialectic Behavioral Therapy, Youth Mentor Counseling, Interactive Journaling Workbooks, Healthy Lifestyles, Word on the Street, Poetry, Tablet programs on Master Plan Work and Money Essentials, Visual Arts and Mural, Music in Society, Substance Treatment Services, Youth Sex Offender Treatment, Anger Management, Passport to Manhood, Money Matters, Alpha Leadership, and Behavioral Health.

Probation Officer Andrade testified about the incident that occurred in September 2023 while the transfer hearing proceedings were pending. Appellant and two other minors approached A.A. as he played soccer in the yard. Appellant said to A.A., "'I heard you regulate this unit'." Officer Andrade viewed this as a challenge to exert authority. When A.A. tried to put his arm around appellant, appellant pushed him away and said, "[Y]ou're a bitch." Officer Andrade intervened as appellant shouted obscenities at A.A., gave the command to "take it down" multiple times, and had to deploy his olserium capsicum (OC) spray before appellant fully complied.

Doug Ugarkovich, a juvenile justice consultant, testified on behalf of appellant. He opined that appellant was amenable to rehabilitation in the 47 months remaining until the expiration of the juvenile court's jurisdiction.

Dr. Stephanie Marcy, a clinical psychologist, interviewed appellant and reviewed reports. She also examined appellant using the Million Clinical Multiaxial Inventory and Adverse Childhood Experience checklist. Dr. Marcy testified the test results showed appellant was responding positively to the therapeutic interventions he had received while in programming. Dr. Marcy opined there was a "very strong potential" for appellant to continue to rehabilitate over the next four years. On cross-examination, Dr. Marcy acknowledged that planning ahead to commit a crime would be a sign of criminal sophistication.

*The Juvenile Court's Order*

In March 2024, the juvenile court issued its ruling, finding that the People had met their burden on four of the five transfer criteria. In its ruling, the juvenile court found, by clear and convincing evidence, that appellant was not amenable to

5

rehabilitation while under the juvenile court's jurisdiction and ordered the matter transferred to adult criminal court.[2]

*Discussion*

We review the juvenile court's determination to transfer a minor to criminal court for abuse of discretion. (*J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 714 (*J.N.*); *In re Miguel R.* (2024) 100 Cal.App.5th 152, 165 (*Miguel R.*).) "The court's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. [Citation.] A decision based on insufficient evidence or the court's "'erroneous understanding of applicable law'" is subject to reversal. [Citation.]" (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 187.) But, as indicated, we do not reweigh the evidence and we do not substitute our discretion for the discretion exercised by the trial court. The rules attendant to these standards were explained in detail by this court in *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449, citing inter alia *Brown v. Newby* (1940) 39 Cal.App.2d 615, 618.

Our opinion ". . . is not a controversial tract, much less a brief in reply to the counsel against whose views we decide." (*Holmes v. Rogers* (1859) 13 Cal. 191, 202.) Thus, we do not view the trial court's contemporaneous remarks, which appellant seizes upon, as impeaching its ruling. (E.g., *People v. Gibson* (1987) 195 Cal.App.3d 841, 853.) It is not determinative that the trial court mistakenly said that the case originated in the criminal court. (See also *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)

---

[2] The juvenile court found that the People had not carried their burden as to "previous juvenile court attempts to rehabilitate." (See discussion, at pp. 11-12, *post*.)

6

The ultimate question for the juvenile court in a transfer petition is whether a minor is amenable to rehabilitation before the juvenile court's jurisdiction expires. (§ 707, subd. (a)(3); *In re E.P.* (2023) 89 Cal.App.5th 409, 416.) To order a minor's transfer to a court of criminal jurisdiction, the juvenile court must "find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).)

In making that determination, the juvenile court must consider five specific factors: (1) "[t]he degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)); (2) "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction" (*id.*, subd. (a)(3)(B)(i)); (3) "[t]he minor's previous delinquent history" (*id.*, subd. (a)(3)(C)(i)); (4) "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor" (*id.*, subd. (a)(3)(D)(i)); and (5) "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (*id.*, subd. (a)(3)(E)(i)).

The statute also sets forth a nonexhaustive list of relevant factors for the juvenile court to consider with respect to each of the five criteria. (§ 707, subd. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).) If the juvenile court orders a transfer to criminal court, it must "recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (*Id.*, subd. (a)(3).)

*Sufficiency of the Evidence/Abuse of Discretion*

Appellant contends the juvenile court abused its discretion in ordering him transferred to the superior court because the

prosecution did not present sufficient evidence to prove he was not amenable to rehabilitation prior to the expiration of the juvenile court's jurisdiction. He contends Dr. Carmichael's opinion that "it was possible, but not probable" he could be rehabilitated prior to the expiration of the juvenile court's jurisdiction, is not "clear and convincing" evidence. This is especially so, appellant contends, given that two defense experts testified he could be timely rehabilitated, and he had been participating in his programming at the "'Excellent Level.'" But the juvenile court was not required to credit the testimony of the defense experts. As trier of fact, it was free to discredit such testimony. Phrased otherwise, any trial court is not bound by an expert's testimony and opinion. (See *People v. Johnson* (1992) 3 Cal.4th 1183, 1231-1232; *People v. Engstrom* (2011) 201 Cal.App.4th 174, 187.)

A juvenile court can retain jurisdiction over a minor as described in section 602 for the offense of murder until he or she attains 25 years of age, or upon the expiration of a two-year period of control, whichever occurs later. (§§ 607, subd. (c), 1769, subd. (b).) In determining whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature." (§ 707, subd. (A)(3)(B)(ii).) "Expert witnesses may testify on the issue of the availability of treatment programs in the juvenile court system and the amenability of the minor to those programs." (*J.N., supra,* 23 Cal.App.5th at p. 721.)

Here, the juvenile court concluded "there is not enough time for the Minor to rehabilitate." In so concluding, the juvenile court considered all of the evidence presented, including expert

testimony.  In its written ruling, the juvenile court expressly noted, "[t]he serious nature of the charged crimes – murder, sexual assault, robbery and burglary, and the Minor's conduct before and after incarceration clearly indicate his needs are complex and require prolonged treatment and supervision beyond what the juvenile court['s] jurisdiction can offer."

This is consistent with Dr. Carmichael's conclusion that it would be "very difficult" and "unlikely" that appellant could achieve rehabilitation prior to age 25.  Indeed, Dr. Carmichael explained he would have anticipated seeing "a greater trajectory towards progress."

*Application of Section 707 Transfer Criteria*

Appellant next contends the juvenile court did not properly apply the section 707 transfer criteria.  As we have indicated, we need not reply to these "sub-arguments."  (See *ante,* p. 7.)  But, we elect to treat with two of them, sophistication and previous history.  Appellant contends the factors the juvenile court considered as to criminal sophistication and previous delinquent history were insufficient to justify transfer under the heightened clear and convincing evidence standard.

When evaluating the degree of criminal sophistication exhibited by the minor, section 707 requires the juvenile court to "give weight to any relevant factor, including, but not limited to, the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense; the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior; the effect of familial, adult, or peer pressure on the minor's actions; the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster

9

care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery on the minor's criminal sophistication." (*Id*., subd. (a)(3)(A)(ii).)

Appellant contends he presented "significant evidence" of these factors, including evidence of childhood trauma and favorable evidence of his therapeutic growth while in custody. According to appellant, the juvenile court did not acknowledge this evidence.

But the juvenile court expressly stated in its written ruling that it had considered "the arguments of counsel, the reports and exhibits admitted into evidence, and the testimony of all witnesses," which necessarily included evidence of appellant's social, emotional, and intellectual history.

After considering all of the evidence, the juvenile court opined that appellant's charged conduct involved violence and had progressed from robbery to robbery with a knife to murder with a knife. The crimes were not spontaneous or impulsive but were indicative of deliberation. The victims were vulnerable, elderly, or minor victims. There was little to no indication appellant suffered from any intellectual deficits. While in custody, he was able to finish high school and had taken college level courses. During an interview with law enforcement, appellant was "evasive," and denied any involvement in the murder but later discussed attempts to conceal evidence.

Indeed, even appellant's expert witness, Dr. Marcy, acknowledged that planning ahead to commit a crime would be indicative of criminal sophistication.

When evaluating the minor's previous delinquent history, section 707 requires the juvenile court to "give weight to any relevant factor, including, but not limited to, the seriousness of

10

the minor's previous delinquent history and the effect of the minor's family and community environment and childhood trauma on the minor's previous delinquent behavior." (*Id.*, subd. (a)(3)(C)(ii).)

As to this criterion, the juvenile court recounted appellant's previous contact with law enforcement, including bringing a knife to school, trespassing, robbery, theft, and failing to fulfill the terms of his probation. The juvenile court also noted appellant's "significant school delinquency" history starting in the seventh grade, including poor behavior, suspensions, and multiple attempts by school officials to rehabilitate appellant. This previous delinquent history supported transfer to adult court. (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 165.)

*Disposition*

The juvenile court's order transferring this matter to the superior court is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.


We concur:


BALTODANO, J.


CODY, J.


11

Gilbert A. Romero, Judge
Superior Court County of Ventura
_____

Claudia Y. Bautista, Public Defender, Thomas Hartnett, Snr. Deputy Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Chung L. Mar, David E. Madeo, and David Glassman, Deputy Attorneys General, for Plaintiff and Respondent.