Filed 3/18/25  Conservatorship of the Person and Estate of A.P. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person and Estate of A.P. | 2d Civil No. B333366 (Super. Ct. No. 21PR-00508) (Santa Barbara County) |
| JASON DOMINGUEZ, Appellant, v. A.P., Respondent. | |

Appellant Jason Dominguez was appointed Temporary Conservator of the person and estate of respondent A.P. on November 10, 2021.  Shelley McConnell was appointed A.P.'s Conservator effective September 16, 2022.  Appellant filed an accounting and petition for fees seeking to recover $77,080.83 for himself and $108,298.27 in attorney fees for his counsel.  The trial court ultimately awarded attorney fees of $39,000 and

temporary conservator fees of $26,000. Appellant contends the trial court abused its discretion because it based its award on a mistake of fact regarding the value of A.P.'s estate and did not consider all of the relevant factors enumerated in California Rules of Court, rule 7.756. We affirm.

*Facts*

A.P., an elderly member of the Chumash Tribe, became the subject of a conservatorship after concerns were expressed regarding the personal and medical care he was receiving and whether he was subject to financial abuse. As temporary conservator, appellant stabilized A.P.'s living situation by obtaining medical care for him, clearing a cluttered home, securing his real property and hiring in-home caregivers and security. After 11 months, appellant was removed as temporary conservator and a permanent conservator was appointed. A.P. died about two years later, in late August 2024.[1]

Appellant filed a petition for approval of his first and final accounting and to recover fees for his services and for the attorney fees incurred by the estate. The public defender, who served as counsel for A.P., objected to both the accounting and to the fee requests because, among other things, the accounting did not comply with the Probate Code, appellant did not provide receipts for many expenditures and did not take control of $729,000 in tribal benefits that were being withheld by the tribe and $8,000 in Social Security checks owed to A.P. Appellant responded that his limited authority as temporary conservator did not allow him to marshal all of A.P.'s assets, including his

---

[1] Respondent's Request for Judicial Notice of the Notice of Conservatee's Death, filed in the Superior Court on August 29, 2024, is granted.

2

Social Security checks. The tribe had represented to him that A.P.'s tribal income would be transferred to A.P.'s estate once a permanent conservator was appointed.

The accounting submitted by appellant represented that the estate managed by appellant, as temporary conservator, had a beginning balance of $325,925.62. After disbursements of $274,402, the temporary conservator left the estate with a balance of $51,523. Appellant asserted, however, that A.P.'s entire estate had a value exceeding $6 million.

His successor, the permanent conservator, did not confirm the $6 million estimate but acknowledged that A.P. owned at least three properties, several vehicles and at least one bank account with a balance of over $2,646,000. None of those assets were part of the estate managed by appellant.

Appellant caused the estate to pay half of the property taxes A.P. owed but did not pay his outstanding state income tax. At the end of the temporary conservatorship, A.P. owed back taxes of more than $124,000 and had other unpaid invoices exceeding $95,000. Appellant did not submit receipts for many disbursements he authorized, incurred excessive fees for accounting and for security guards, and failed to submit an inventory or appraisal, making it impossible to reconcile the account.

Appellant's supplemental declaration noted that, when he was appointed temporary conservator, "financial institutions had frozen the bulk of [A.P.'s] assets, and [that] I did not have authority to marshal excess funds." He further noted that he "was only authorized to access $50,000 in assets as well as make specific transactions pre-authorized by this Court."

In a later supplemental accounting, appellant denied comingling any of A.P.'s funds and maintained that that he received prior court authorization before transferring funds and paying A.P.'s expenses. Appellant claimed that litigation, which he did not control, prevented him from resolving A.P.'s tax liabilities.

Appellant opined that the costs incurred for A.P.'s home care, security and storage were standard in the industry. He explained that, when the conservatorship began, A.P. was in the hospital with COVID. Appellant could not find a care facility that would admit A.P. because he was COVID-positive and had dementia. A.P. could not return to his home because it was cluttered and he needed professional care. Appellant arranged to have the home cleared and cleaned quickly. He also arranged for in-home hospice care so A.P. could return home. Security was necessary because A.P.'s former caregiver had an altercation with one of the hospice workers. Appellant contended that A.P.'s family members sorted through items that had been cleared from the house. Some items were returned to the house, others were taken by family members and the remainder were either donated or disposed of.

At a hearing in September 2022, the trial court terminated appellant's appointment as temporary conservator and appointed a permanent conservator. In reaching that conclusion, the trial court noted that appellant "[has] done a good job. The conservatee has been – is definitely healthier than he was when we started these proceedings. [Appellant is] to be commended for that." It further stated that appellant, "has safeguarded the properties and the conservatee from unauthorized visits from individuals who, according to the

4

paperwork, have sought to do him harm, are not productive." The trial court also acknowledged that appellant "did assist with the health. The conservatee is in a much better health situation today than he was when we found him when we first had this case."

At the first hearing after appellant filed his accounting and fee request, the trial court questioned appellant and his counsel concerning many of the objections raised by the public defender on A.P.'s behalf. The trial court noted that it was "reluctant" to grant the public defender's request for sanctions because appellant "stepped into a situation that was problematic and clearly made the situation better. The accounting could be better, but overall the conservatee wound up in a better position during the time that [appellant] was assisting with his care and other things and the properties, and so I am going to be hard-pressed to sanction [appellant]. We can deal with that in the compensation issues, but not in the sanction aspect of it."

At the next hearing, the trial court again heard argument regarding the public defender's request for sanctions and appellant's request for conservator and attorney's fees. Once again, the court stated that it was "somewhat reluctant to sanction" appellant based on "technical defects in the accounting and some attorney's fee adjustments," given the improvements appellant made in A.P.'s "situation" and health. It stated that, in deciding the fee requests, it would consider the "totality of the circumstances."

The final hearing featured more argument regarding fees, sanctions and surcharges. The public defender argued that appellant's entire fee request should be surcharged based on his failure to secure A.P.'s tribal income and his failure to submit an

accounting that complied with the Probate Code. The trial court denied the request for sanctions and surcharges, repeating its analysis that appellant began with a "chaotic situation" involving litigation in "multiple venues," and a conservatee with "a lot of problems" and "health issues." Investigative reports from San Luis Obispo County Adult Protective Services demonstrated to the trial court that "the situation improved after [appellant] became [the] temporary conservator and there was a lot of work to be done. It was chaotic at the ranch. There were property issues that had to be dealt with." The trial court determined that it would not sanction appellant but would, instead, adjust the fee award. "I think the $185[,000] for an estate that was about $300,000, about 62 percent of that estate, is excessive." Ultimately, while the trial court acknowledged that "nothing was easy in this case" and that appellant "was placed in a difficult position," it concluded that appellant and his counsel were entitled to a total fee amount of $65,000.

### Contentions

Appellant contends the trial court's order awarding fees was an abuse of discretion because the court based its award solely on its mistaken factual conclusion that the conservatorship estate was worth only about $300,000. First, he contends the estate should be valued at $6 million. Second, he contends the trial court failed to consider other relevant factors as required by California Rules of Court, rule 7.756. Respondent contends there was no abuse of discretion. We agree with respondent.

### Standard of Review

We review the trial court's order awarding compensation to the temporary conservator under the familiar and deferential abuse of discretion standard. (*Conservatorship of*

6

*Levitt* (2001) 93 Cal.App.4th 544, 549.) "A '. . . showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice . . . .' [Citation.] '"A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." [Citations.]' [Citation.]" (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1449.)

*Discussion*

Probate Code sections 2640 and 2641 authorize "just and reasonable" compensation to a conservator and his or her counsel for services rendered to the estate. In determining "just and reasonable" compensation, the trial court "may consider" the "nonexclusive factors" enumerated in California Rules of Court, rule 7.756, subdivision (a) (hereafter rule 7.756). No single factor "should be the exclusive basis for the court's determination of just and reasonable compensation for services rendered in the best interest of the conservatee or ward." (*Id*., subd. (b).) The relevant factors include: "(1) The size and nature of the conservatee's or ward's estate; (2) The benefit to the conservatee or ward, or his or her estate, of the conservator's or guardian's services; (3) The necessity for the services performed; (4) The

7

conservatee's or ward's anticipated future needs and income; (5) The time spent by the conservator or guardian in the performance of services; (6) Whether the services performed were routine or required more than ordinary skill or judgment; (7) Any unusual skill, expertise, or experience brought to the performance of services; (8) The conservator's or guardian's estimate of the value of the services performed; and (9) The compensation customarily allowed by the court in the community where the court is located for the management of conservatorships or guardianships of similar size and complexity." (*Id.*, subd. (a).)

Appellant contends the trial court abused its discretion in determining the amount of the fee award because it relied solely on its mistaken factual finding that A.P.'s estate had a value of about $300,000. The record on appeal provides no support for this contention nor does it disclose that the trial court abused its discretion.

To begin with, the record demonstrates that the trial court did not rely solely on its estimate of the size of A.P.'s estate. Instead, the trial court stated that it was considering the "totality of the circumstances" in deciding appellant's request for fees and the record amply supports that characterization. The trial court repeatedly noted that A.P.'s health and living conditions improved after appellant's appointment. (Rule 7.756, subd. (a)(2).) It noted that appellant secured A.P.'s property and protected him from "unauthorized individuals" who sought to harm him. (*Ibid.*) At the same time, the trial court considered evidence that appellant spent an inordinate amount on security guards and caregivers. (*Id.*, subd. (a)(3).) It also considered evidence that appellant did not collect substantial income owed to

8

A.P. by the tribe, did not resolve his outstanding tax liabilities and did not submit an accounting that complied with the Probate Code. (*Id.*, subds. (a)(2), (a)(3).) Finally, the trial court noted its belief that the fee requests were excessive, given that the fees requested were about 62% of the estate as a whole. (*Id.*, subds. (a)(1), (a)(3).) We conclude the trial court considered more than one factor in determining the fee award.

Nor does the record support appellant's contention that the trial court erred in finding A.P.'s estate had a value of about $300,000. Appellant's own accounting reflected opening receipts of $325,925.92. A declaration filed by his successor as conservator stated that A.P. owned many additional assets, including real property, vehicles and a bank account with a balance of $2,175,000. However, no evidence in the record supports appellant's contention that the estate has a value of more than $6 million.

Moreover, as appellant repeatedly notes, the order appointing him temporary conservator did not authorize him to marshal all of A.P.'s assets. Instead, he was initially authorized only to "freeze all financial accounts of [A.P.] save and accept [sic] $10,000.00, which shall be marshalled by the Conservator into a Conservatorship account." That amount was later increased to $50,000. Appellant's request to take control of three other accounts with larger balances was never granted. Thus, even if A.P.'s overall estate is worth millions, appellant was never authorized or expected to manage all of those assets. The estate he was appointed to administer was much smaller. The trial court did not abuse its discretion when it relied on that lower value in determining "just and reasonable" for the services of appellant and his counsel.

9

*Conclusion*

The September 12, 2023 Ruling on Pleadings, awarding fees to the temporary conservator and his counsel, is affirmed.  Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

10

Timothy J. Staffel, Judge

Superior Court County of Santa Barbara

_____

Law Offices of Cristi Michelon Vasquez and Cristi Michelon Vasquez, for Appellant.

Christian C. Buckley, for Respondent.